MERCHANTS' COTTON PRESS AND STORAGE COMPANY *v.* INSURANCE COMPANY OF NORTH AMERICA.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 807. Submitted January 8, 1894. — Decided January 22, 1894.[1]

A railroad company agreed with a cotton compress company that the latter should receive and compress all the cotton which the railroad might have to transport in compressed condition, and that it should insure the same for the benefit of the railroad company, or of the owners of the cotton, for a certain compensation which the railroad company agreed to pay weekly. It was further agreed that the compress company, on receiving the cotton, was to give receipts therefor, and that the railroad company, on receiving such a receipt, was to issue a bill of lading in exchange for it. Cotton of the value of $700,000, thus deposited with the compress company for compress and transportation, was destroyed by fire. That company had taken out policies of insurance upon it, but to a less amount, in all of which the compress company was named as the assured, but in the body of each policy it was stated that it was issued for the benefit of the railroad company or of the owners. The various owners of the cotton further insured their respective interests in other insurance com-

---

[1] The opinion in this case is also entitled in No. 808, National Fire Insurance Company *v.* Insurance Company of North America; No. 809, Mutual Fire Insurance Company *v.* Insurance Company of North America; No. 810, Continental Insurance Company *v.* Insurance Company of North America; No. 811, Fire Association of New York *v.* Insurance Company of North America; No. 812, Liverpool and London and Globe Insurance Company *v.* Insurance Company of North America; No. 813, Royal Insurance Company *v.* Insurance Company of North America. All these cases were brought from the Supreme Court of the State of Tennessee by writs of error, and all were submitted at the same time with No. 807, and on the same briefs.

panies, called in the litigation the marine insurance companies. After the fire the amounts of the several losses were paid to the assured by the several marine companies. In an action in the courts of Tennessee to settle the rights of the parties, the Supreme Court of that State held, (89 Tennessee, 1; 90 Tennessee, 306,) that the companies so paying were entitled to be subrogated to the rights of the owners or consignees against the railroad company under its bills of lading, and that the railroad company was entitled to have the insurance which had been taken out by the compress company collected for its benefit. The railroad company not being party to those suits, the marine insurance companies filed their bill in equity in a state court in Tennessee against the compress company, the several persons who had insured the destroyed cotton for it, and the railroad company, to reach and subject the fire insurance taken out by the compress company for the benefit of the railroad company, and for other relief set forth in the bill. The plaintiffs in the suit were, a corporation under the laws of Pennsylvania, a corporation under the laws of New York, and a corporation under the laws of Rhode Island, on behalf of themselves and of all other companies standing in like position. On the other side were two corporations under the laws of Pennsylvania, two corporations under the laws of Great Britain, a corporation under the laws of New York, certain residents of Rhode Island, certain citizens of New York, certain citizens of Tennessee, two aliens, and forty-four insurance companies of West Virginia, Pennsylvania, New York, Illinois, Louisiana, Wisconsin, Alabama, Connecticut, Ohio, Texas, Indiana, and Great Britain. The defendants petitioned for the removal of the cause to the Circuit Court of the United States, on the ground that the controversy was wholly between citizens of different States, or between citizens of one or more of the several States and foreign citizens and subjects, and that the same could be fully determined as between them. The petition was denied and the cause proceeded to judgment in the state court. In the course of the trial it was attempted to be proved that special rates, rebates or drawbacks had been given in violation of the interstate commerce laws and regulations. A decree being entered for the plaintiffs, giving relief substantially as prayed for in the bill, the Supreme Court of the State, on appeal, affirmed the judgment below, and held that the law making agreements for rebates, etc., void, did not invalidate the contracts of affreightment. A writ of error being sued out to this court, it is now *Held,*

(1) That whether the cause be looked at as a whole, or whether it be considered under any adjustment or arrangement of the parties on opposite sides of the matter in dispute, there was no right of removal, on the part of the several plaintiffs in error, or either of them:

(2) That there is nothing in the interstate commerce law which vitiates bills of lading, or which, by reason of an allowance of rebates, if actually made, would invalidate a contract of affreightment, or exempt a railroad company from liability on its bills of lading.

THE case is stated at length in the opinion of the court. For. the purpose of understanding the brief of counsel, the condensed statement in the head-note is sufficient. There was also a motion to dismiss or affirm.

*Mr. T. B. Turley, Mr. L. E. Wright, Mr. C. W. Metcalf* and *Mr. S. P. Walker* for plaintiffs in error.

I. The motion to affirm should not be entertained for the reason that, though it is nominally coupled with a motion to dismiss, such motion to dismiss is. colorable only, and manifestly made for the purpose of bringing on the motion to affirm. *Whitney* v. *Cook,* 99 U. S. 607.

The record shows that the question upon which the juris-diction depends is not frivolous, and that the appeal was not taken for delay.

II. The record presented a case for removal to the Federal court, under the act of Congress in that regard. It showed a separable controversy between citizens of different States, which could be determined without the presence of any of the other parties to the record. *Knapp* v. *Railroad Co.,* 20 Wall. 117; *Barney* v. *Latham,* 103 U. S. 205; *Hyde* v. *Ruble,* 104 U. S. 407; *Harter* v. *Kernochan,* 103 U. S. 562; *Kanouse* v. *Martin,* 15 How. 198; *The Removal Cases,* 100 U. S. 457; *Ayres* v. *Chicago,* 101 U. S. 184; *Shainwald* v. *Lewis,* 108 U. S. 158; *Ayres* v. *Wiswall,* 112 U. S. 187; *Ayres* v. *Watson,* 113 U. S. 594; *Crump* v. *Thurber,* 115 U. S. 56; *Ins. Co. of North America* v. *Delaware Mut. Ins. Co.,* 50 Fed. Rep. 243.

III. The record establishing that the contracts of affreight-ment between the C. V. & C. Line and Jones Bros. & Co. were made in violation of the interstate commerce law, — such violation making the whole contract illegal under the terms of the statute, — no recovery should have been allowed on the bills of lading issued by the C. V. & C. Line to Jones Bros. & Co.; and the case of the complainant marine com-panies depending upon the establishment of the liability of the carriers must therefore fail so far as concerns those bills.

of lading. *Petrel Guano Co.* v. *Jarnette*, 25 Fed. Rep. 675; *Dent* v. *Ferguson*, 132 U. S. 50; *Hannay* v. *Eve*, 3 Cranch, 242; *Gibbs* v. *Baltimore Gas Co.*, 130 U. S. 397; *Miller* v. *Ammon*, 145 U. S. 421; *St. Louis &c. Railroad* v. *Terre Haute &c. Railroad*, 145 U. S. 393.

*Mr. John M. Butler*, *Mr. Holmes Cummins* and *Mr. William H. Carroll* for defendants in error.

MR. JUSTICE JACKSON delivered the opinion of the court.

The writ of error in each of these seven causes (which were submitted together) presents the same Federal questions, which are, first, whether the Supreme Court of Tennessee erred in sustaining the action of the chancery court of Shelby County of that State, denying the petition of several of the plaintiffs in error to remove the cause to the Circuit Court of the United States for the Western District of Tennessee; and, secondly, in holding that certain alleged special rates, rebates, or drawbacks, allowed by Anthony J. Thomas and Charles E. Tracy, receivers of the Cairo, Vincennes and Chicago Railroad Company, through L. L. Fellows, their agent at Memphis, to Jones Brothers & Company, of that place, on cotton shipped over that line to various points in the east, were not in violation of the interstate commerce acts regulating commerce between States of the Union, and did not render the bills of lading issued by the railroad for cotton transported or to be transported so illegal as to invalidate the same and prevent any recovery thereon against the carrier.

The questions thus presented grew out of the following state of facts : On November 17, 1887, about 14,000 bales of cotton in the West Navy Yard Compress of the Merchants' Cotton Press and Storage Company (hereafter called the compress company) were destroyed by fire. The value of the cotton was about the sum of $700,000. Of the total number of bales thus destroyed, about 9608 bales were covered by bills of lading issued by various transportation companies to the owners or consignees of the cotton. The bills of lading issued by the Cairo, Vincennes and Chicago Railroad Company (hereafter

called the railroad company) covered 5087 bales of the cotton destroyed, valued at $245,733.46.

In May, 1887, a contract had been entered into between the railroad company and its receivers, Anthony J. Thomas and Charles E. Tracy, on the one side, and the compress company on the other, by the terms of which the railroad company and its receivers agreed to give to the compress company all cotton to compress that the railroad company might have to transport out of Memphis in a compressed condition. The compress company, on its part, agreed to properly compress all such cotton, and also to insure the same for the benefit of the railroad company, or owners, for a certain compensation to be paid weekly, which was intended to cover both the service for compressing the cotton and the insurance to be taken out thereon, in good and solvent companies by the compress company. This insurance was to cover any loss while the cotton was under the control of the compress company and until delivered to the railroad company. The contract further provided that the railroad company and its receivers constituted the compress company its agent to receive all cotton intended for transportation over the railroad company's line, and to sign receipts therefor, on the production of which, bills of lading would be issued by the railroad company. This contract was to continue in force until August 31, 1896.

Under and in pursuance of this contract cotton was delivered to the compress company, by the owners or their agents, for transportation over the line of the railroad company from Memphis to points east to the extent of 5087 bales, for which dray tickets or receipts were given by the compress company, and on the production of which the agent of the railroad company issued bills of lading to the several and respective owners or consignees of such cotton.

The railroad company had an all-rail line from Memphis, and also a partly water and partly rail line, the water line extending from Memphis to Cairo, Illinois, at which point the railroad company's rail line commenced and extended by means of its connection eastward.

The compress company had a similar arrangement for insuring cotton with other transportation lines, and in pursuance of its undertaking with the carriers it took out insurance on the cotton deposited with it for compression before being transported, aggregating the sum of $301,750, in forty-four different fire insurance companies, corporations of various States of the Union and of foreign kingdoms. The amount of this insurance fell far short of the value of the cotton deposited with it for compression and which was destroyed by the fire. In all of these policies of insurance taken out under and in pursuance of its contract with the carriers, the compress company was named as the assured, but in the body of each of the policies it was set forth and stated that the insurance on the cotton was for the benefit of the railroads, transportation lines, or owners. The insurance was to attach on receipt of the cotton by the compress company, and to terminate when the same was removed for transportation.

The various owners or consignees of the 5087 bales of cotton covered by the bills of lading of the railroad company, with one or two exceptions, insured their interests in their respective lots of cotton in what is called in the litigation marine insurance companies.

There was $301,750 of insurance thus taken out by the compress company for the benefit of the carriers, and at the same time there was a large amount of insurance taken out by the owners or consignees in the marine insurance companies on the bills of lading issued by the railroad company to the several owners of the cotton.

Soon after the destruction of the cotton various suits were commenced in the state courts by the owners of the cotton destroyed, and the rights of the parties were to some extent settled and adjusted in the cases of the *Lancaster Mills* v. *Merchants' Cotton Press and Storage Co.,* 89 Tennessee, 62, and *Deming & Co.* v. *Merchants' Cotton Press and Storage Co.,* 90 Tennessee, 306, 358.

In this last case the Supreme Court of Tennessee held that the marine insurance companies — most, if not all of whom, had paid the policies issued by them covering the losses of the

owners or the consignees of the cotton — were entitled to be subrogated to the rights of such owners or consignees, as against the railroad company under its various bills of lading, if that company was liable on such bills of lading. The Supreme Court further declared in that case that the compress company held the insurance in the forty-four fire insurance companies taken out by it for the benefit and indemnity of the railroad company or companies which had issued bills of lading on the cotton destroyed, and that to the extent of its proper share or proportion of such fire insurance the railroad company was entitled to have the same collected for its protection and indemnity; but in respect to the liability of the railroad company upon its bills of lading to these marine insurance companies, the court could make no decree, or render any judgment, for the reason that the railroad company was not a party to that cause. It, however, declared the rights of the marine insurance companies and the liability of the compress company, and of the fire insurance companies, and left the former companies to their remedy by way of subrogation against the railroad company upon its bills of lading to be settled and determined by some new proceeding; and it was ordered that $210,224.37 of the fire insurance fund be reserved for the indemnity of the railroad company, if that line should be sued and its liability to the marine insurance companies should be established.

Accordingly, on August 7, 1891, after the decision of the Supreme Court of the State had been rendered in *Deming & Co.* v. *Merchants' Cotton Press and Storage Company*, 90 Tennessee, 306, the Insurance Company of North America of Philadelphia, a corporation by the laws of the State of Pennsylvania; the Atlantic Mutual Insurance Company, a corporation by the laws of the State of New York; the Providence Washington Insurance Company, a corporation by the laws of the State of Rhode Island, on behalf of themselves and all other marine insurance companies standing in like position, who had paid their insurance to the owners of the cotton, filed their bill in the chancery court of Shelby County, Tennessee, against the Delaware Mutual Safety Insurance Company, a corporation by the laws

of the State of Pennsylvania; the Marine Insurance Company, Limited, of London, resident of the United Kingdom of Great Britain and Ireland; the Phenix Insurance Company, a corporation by the laws of the State of New York; R. H. Deming and James H. Foster, partners as R. H. Deming & Co., residents of the State of Rhode Island; the British and Foreign Marine Insurance Company, Limited, of Liverpool, England, resident of the United Kingdom of Great Britain and Ireland; the Cairo, Vincennes and Chicago Line, of Illinois; Anthony J. Thomas and Charles E. Tracy, as receivers thereof, citizens of New York; The Merchants' Cotton Press and Storage Company, a corporation, of Tennessee; S. R. Montgomery, Napoleon Hill, and Thomas H. Allen, Jr., as trustees, citizens of Tennessee, together with six other alien marine insurance companies, and William Watson and E. R. Wood, aliens; and forty-four fire insurance companies of West Virginia, Pennsylvania, New York, Illinois, Louisiana, Wisconsin, Alabama, Connecticut, Ohio, Texas, Indiana, and of the United Kingdom of Great Britain and Ireland.

The bill, in the nature of a creditor's bill, after reciting the facts already presented, set out the various lots of cotton which the complainants and the other marine insurance companies had insured for the owners or consignees thereof, and which were covered by the bills of lading of the railroad company, which insurance they had paid to the owners upon the destruction of the cotton, and further alleged the contract between the compress company and the railroad company, and that the former was to keep the cotton insured for the benefit of the railroad company. The bill then proceeded to charge that, having paid the owners the insurance on the cotton destroyed, the complainants were entitled to be subrogated to the rights of such owners against the railroad company on its bills of lading; and to have the rights of the railroad company enforced against the compress company, and the various fire insurance policies which the latter company had taken out on the cotton for the benefit of the railroad company.

The bill stated that the compress company held the fire insurance as trustee or agent for the railroad company; that the

railroad company, being liable to the owners of the cotton, to whom it had issued bills of lading for the cotton while in the possession of the compress company, and the marine insurance companies having paid the owners for the loss thereof, were entitled to be substituted to the position of the owners of the cotton as against the railroad company, and as against the compress company, and the fire insurance companies, which had issued policies to the compress company for the benefit of the railroad company.

It was further set out in the bill that after the loss occurred the compress company wrongfully assumed to deal with the fire insurance fund by applying a portion thereof, amounting to $52,472.26, for the use of such owners of the cotton as had dray tickets from the compress company, and to whom no bills of lading had been issued, and who had no other insurance; and that each defendant fire insurance company had paid on its respective policies to the compress company about $15\frac{1}{2}$ per cent of the amount of its insurance.

It was claimed in the bill that the compress company wrongfully assumed to thus deal with the fire insurance fund, and in disregard or violation of the decision of the Supreme Court of the State, which had held that the fire insurance collected should be held for the benefit of the transportation lines which had issued bills of lading for the cotton covered therein.

The bill further alleged that the compress company was neglecting its duty to collect the fund, and it and the fire insurance companies were confederating to prevent and avoid the payments by the fire insurance companies of their policies on the cotton represented by the railroad company's bills of lading.

The bill sought to reach and subject, not only the fire insurance taken out by the compress company for the benefit of the railroad company, but also a share or interest of the railroad company in and to certain real estate which the compress company had conveyed after the fire to Napoleon Hill, S. R. Montgomery, and T. H. Allen, Jr., to secure to the persons in contractual relations with it the payment of the contingent

liability of the compress company to any or all of them by reason of the failure to fully insure the cotton for which the carriers were liable.

It also claimed that of the $52,472.26 collected by the compress company and misappropriated to other losses, the sum of $4394.12 of these collections should have gone to the railroad company on account of cotton covered by its bills of lading. The compress company was sought to be held liable for this amount.

It was further claimed that several of the fire insurance policies were lost by reason of the compress company not collecting the same, and that others were not taken out in good and solvent companies, and for those lost the compress company was sought to be made liable in favor of the railroad company.

Among various marine insurance companies which were named as defendants, as standing in like position with the complainants, was the Phenix Insurance Company, a corporation by the laws of the State of New York, which had policies outstanding in favor of the owners of 3609 bales of cotton, of the value of $179,108. The Phenix Insurance Company, together with Deming & Company, on August 12, 1891, filed their answer and cross-bill against the same defendants, setting out that it had paid the loss on that cotton, and claimed the same rights as were sought to be asserted in the bill of the complainants.

On August 7, 1891, the railroad company and Anthony J. Thomas and Charles E. Tracy, receivers thereof, together with the Delaware Mutual Safety Insurance Company, filed their answer and cross-bill in the case against the compress company and the fire insurance companies, which admitted the liability of the railroad company to the Delaware Mutual Safety Insurance Company to the extent of 500 bales, for which it had issued bills of lading; but denied generally its liability to the marine insurance companies on the bills of lading which it had issued.

The prayer of the original bill was that the questions arising upon the matters and things connected with the loss of the

cotton, the insurance thereon, both fire and marine, together with the bills of lading issued by the railroad company to the owners of the cotton which was to be transported by it, and the liabilities of the railroad company on its bills of lading, and of the compress company, might be settled and adjusted, and that the rights of all parties interested therein might be determined in behalf of the complainants and such marine insurance companies as might choose to come in and become parties to the cause; that the railroad company might be declared liable to them, respectively, for the losses in each lot of cotton covered by its bills of lading; that the compress company should be declared as holding the fire insurance policies as indemnity to the railroad company for the benefit of the complainants and other marine insurance companies standing in like position, and that such insurance might be collected for their benefit; " that attachment issue and be levied upon the interest of the Cairo, Vincennes and Chicago Line in the trust fund held by the Merchants' Cotton Press and Storage Company, and by garnishing the defendant fire insurance companies to answer and state what, if anything, they owe upon their respective policies applicable to the liability of the Cairo, Vincennes and Chicago Line, if liability shall be declared herein, or by any court with the parties requisite to the validity of the judgment before such court."

The bill further prayed for publication as to non-resident defendants, "and that upon a final hearing of this cause this court will decree that the C., V. & C. Line is liable to the holders, and through the holders to the plaintiffs, for the value of each of the lots of cotton covered by the plaintiffs' policies and the bills of lading of the C., V. & C. Line, and will apply the insurance effected by the Merchants' Cotton Press and Storage Company uncollected, rendering proper decrees therefor against the Merchants' Cotton Press and Storage Company and the defendant fire insurance companies in exoneration of that liability; giving the proportionate share to the plaintiffs severally, and to such of the defendants as stand in relation to the cotton as the plaintiffs do; that the court will enforce the trust in the Senatobia Street shed for the benefit

of the plaintiffs and others, to the end that the plaintiffs, and others similarly situated as the plaintiffs, may be fully paid the value of the aforesaid cotton covered under their respective policies of insurance, and distribute the residue, if any there be, to the holders of the certificates issued by the compress company, some of which are held by defendants Napoleon Hill and S. R. Montgomery, who are called upon to produce a specimen of them; and that the said Hill is asked to furnish a list of the holders of such certificates, that they may be parties thereto, they belonging to a numerous class, and their names unknown to the plaintiffs. And the plaintiffs pray for such other relief, general and special, as may be consistent with the facts of the case."

The theory of the bill was that the railroad company and its receivers were liable to the holders of its bills of lading for the value of the cotton burned, and which was covered by them; that the marine insurance companies which had insured the cotton and paid the losses thereon to the owners or consignees thereof, were entitled to be subrogated to the rights of such owners as against the carrier; that the railroad company, through its agent, (the compress company,) was entitled to recover against the fire insurance companies under the policies they had issued to the compress company, as its agent, and for its benefit, and that the complainants, and those standing in like position, were entitled to reach the fire insurance fund through the rights of the railroad company, for whose benefit such fire insurance was taken out by the compress company.

On September 5, 1891, the defendants, the Royal Insurance Company, the Continental Insurance Company, the Fire Association, the Home Insurance Company of Louisiana, the Liverpool, London and Globe Insurance Company, and the National Fire Insurance Company, presented their petition for removal of the cause from the chancery court of Shelby County to the United States Circuit Court for the Western District of Tennessee. That petition was defective and was not acted upon. Thereafter, on November 21, 1891, the same defendants filed their joint amended petition for the removal

of the cause, and, after setting out, the nature and character of the original and cross-bills, and the steps taken in the cause up to date, and the relief sought by the original and cross-bills, proceeded as follows:

"Petitioners state and show that the Merchants' Cotton Press and Storage Company is a citizen of the State of Tennessee; that the C., V. & C. Line is a citizen of the State of Illinois, and that the petitioners are citizens and subjects of foreign States or of States other than the State of Tennessee or Illinois, the said Royal Insurance Company and the said Liverpool, London and Globe Insurance Companies being citizens and subjects of Great Britain, and the said Continental Insurance Company and said Fire Association being citizens of New York, the said Home Insurance Company being a citizen of Louisiana, and the said National Fire Insurance Company being a citizen of the State of Connecticut, and that the controversy is wholly between citizens of different States or between citizens of one or more of the several States and foreign citizens and subjects, and that the same can be fully determined as between them.

"The Merchants' Cotton Press and Storage Company is the assured in the policies issued by said fire insurance companies, and the sole question, so far as concerns said fire insurance companies, is whether said Merchants' Cotton Press and Storage Company, a defendant upon the record, can recover against said fire insurance companies on their respective policies as set out in the bill of complaint in behalf of the plaintiffs and others in like situation or in behalf of the C., V. & C. Line.

"Petitioners further state and show that the amount in the controversy as between the said plaintiffs and each of the petitioners exceeds the sum of two thousand dollars, exclusive of the interest and cost."

The necessary bond was tendered with the petition. The chancery court denied the application for removal, and the cause then proceeded in that court to a final decree, which granted substantially the relief sought for in the bill, and from that decree certain of the defendants appealed to the Supreme Court of the State of Tennessee. That court affirmed the

decree below upon the merits, and sustained the action of the chancery court in denying the application for removal, on the ground that the real controversy in the cause was between the marine insurance companies and the railroad company and its receivers; that the object of the controversy was to charge the railroad company with the loss sustained by shippers and paid by the marine insurance companies, and incidentally to collect from the fire insurance companies such decree as might be obtained against the railroad company and its receivers, to the extent that the railroad company was a beneficiary in the fire policies taken out by the compress company.

The Supreme Court of the State further held that the fire insurance companies occupied substantially the position of garnishees, and that their indebtedness upon their respective policies might be reached and held subject to such final decree as complainants might obtain against the railroad company, and that the fire insurance companies had no separable controversy in the sense of the judiciary acts which entitled them, or either of them, to remove the cause from the state court to the Circuit Court of the United States for the Western District of Tennessee.

The court further held that, if the complainants and the other marine insurance companies standing in like situation with them should fail to establish liability against the railroad company, then no controversy would remain as to the other defendants, as the marine insurance companies had no right of action against any of the fire insurance companies, except as incidental to their litigation with the carrier; that the fire insurance companies were made parties only in aid of the relief which was asked, and that no relief could be granted against them unless the marine insurance companies obtained a judgment against the railroad company. So that the latter was an indispensable party to the litigation, and the suit was in fact a single cause of action against the carrier, with incidental relief against the compress company and the fire insurance companies, and was not removable by the latter companies under the principles laid down in *St. Louis & San Francisco Railway* v. *Wilson*, 114 U. S. 60; *Crump* v. *Thurber*,

115 U. S. 56, 61; *Fidelity Ins. Co.* v. *Huntington*, 117 U. S. 280, 282.

In this conclusion of the Supreme Court of the State of Tennessee we fully concur. The case made by the bill and the relief sought thereunder in behalf of complainants, and those standing in like situation with them, clearly did not present any separable controversy. The plaintiffs in error, who were the petitioners for removal, put their right of removal mainly upon the ground that the case made by the original and cross-bills was virtually a suit by the compress company against the fire insurance companies; that as the compress company was a citizen of Tennessee, and each of said petitioning fire companies was a citizen of another State, or an alien, the latter had a right to remove the cause. This, we think, is a clear misapprehension of the scope of the bill. It admits of no question that the fire insurance policies taken out by the compress company under its contract with the railroad company were, as expressed on the face of the policies, for the benefit of the carrier, and were intended for its protection and indemnity. The compress company had, therefore, no personal interest whatever in the fire insurance policies as against the railroad company by virtue of the contract between the railroad company and the compress company, and by the terms of the fire insurance policies the railroad company was the beneficiary under those policies to the extent necessary to indemnify it against liability for losses incurred directly to itself, or through its liability on its bills of lading. The railroad company had such an insurable interest in the cotton, and was, to that extent, the owner of the insurance standing in the name of the compress company, or held in trust for it. This is settled by *California Insurance Co.* v. *Union Compress Co.*, 133 U. S. 387, 423.

The compress company, aside from the claims which were sought to be asserted against it personally, as trustee of the fire insurance fund, which was sought to be reached to the extent of the railroad company's interest therein, was a necessary and indispensable party to the suit, under the authority of *Thayer* v. *Life Association*, 112 U. S. 717, and *Wilson* v.

*Oswego Township, ante,* 56, decided at the present term of the court.

It admits of no question that the primary liability, or the right to reach the fire insurance fund, had also to be worked out in favor of the complainants, and other marine insurance companies, through the liability of the railroad company upon its bills of lading. The suit could not have proceeded a step without the presence of the railroad company, and certainly it presents no separable controversy as between the compress company and the several fire insurance companies.

It is further suggested, as to the right of removal, that each of the marine insurance companies had a distinct and separate cause of action against each of the fire insurance companies on their respective policies. This is a misapprehension, for the marine insurance companies had no right of action against the fire insurance companies. Their cause of action was against the railroad company under its bills of lading issued to the owners of the cotton, who were the assured in the marine companies, and whose loss had been paid by those companies. The right of those companies was directly against the railroad company, by way of subrogation, and to enforce its liability under its bills of lading. They could not have proceeded directly against the fire companies without the presence of the railroad company. The latter was an indispensable party to the relief sought, for it was only through this alleged liability that the fire insurance fund could be reached and subjected to the indemnity of the marine insurance companies. If each of these marine insurance companies had filed a separate bill for the same relief sought by their joint suit there could have still been no right of removal on the part of the fire insurance companies on the ground of a separable controversy, even if the fire insurance companies were not garnishees, as held by the Supreme Court of Tennessee, for the reason that the railroad company and the compress company would both have been indispensable parties, and could not have been arranged on the same side with the complainants, inasmuch as the liability of the railroad company to the marine insurance company was the primary question to

be determined. *Louisville & Nashville Railroad Co.* v. *Ide*, 114 U. S. 52; *Pirie* v. *Tvedt*, 115 U. S. 41.

The complainants had a right to join in enforcing the common liability of the railroad company upon its bills of lading, and, in the language of Chief Justice Marshall, in *New Orleans* v. *Winter*, 1 Wheat. 91, "having elected to sue jointly, the court is incapable of distinguishing their case, so far as respects jurisdiction, from one in which they were compelled to unite." This ruling has been approved in *Peninsular Iron Co.* v. *Stone*, 121 U. S. 631, 633.

In the present case, as in *Peninsular Iron Co.* v. *Stone*, the rights of each of the complainants and of other marine insurance companies occupying the same position, depend, as against the petitioners for removal, on the alleged right of the marine companies to hold the railroad company liable, by way of subrogation, upon its bills of lading, and, as an incident to that liability, to collect the fire insurance fund to the extent of the railroad company's share therein. "Although, as between themselves, they have separate and distinct interests, they joined in a suit to enforce an obligation which is common to all; . . . and while all the complainants need not have joined in enforcing it, they have done so, and this, under the rule, in *New Orleans* v. *Winter*, 1 Wheat. 91, controls the jurisdiction." The voluntary joinder of the parties has the same effect for purposes of jurisdiction as if they had been compelled to unite.

The right of removal must be determined by the pleadings at the time the petition is filed, *Graves* v. *Corbin*, 132 U. S. 571, 585, and testing the application made in the present case by this rule, we find no dispute or controversy set forth in the bill or in the petition for removal between the compress company and the fire insurance companies. On the contrary, these defendants are charged with confederating together for the purpose of relieving the fire insurance companies from liability on their policies.

The bill seeks to charge the railroad company, and then to reach and subject its equitable rights and interests in the fire insurance fund, taken out by the compress company for its

benefit. There is not in the bill or in the cross-bills any suggestion or intimation that there is any controversy or dispute between the railroad company and the compress company ; or between the compress company and the fire insurance companies. Under such circumstances there is manifestly no separable controversy made by the pleadings, such as entitles the fire companies, or either of them, to remove the cause. There is, in fact, no controversy " which can be fully determined as between them," and as stated by this court in *Torrence* v. *Shedd,* 144 U. S. 527, 530, " by the settled construction of this section (referring to separable controversies) the whole subject-matter of the suit must be capable of being finally determined as between them, (the parties seeking removal,) and complete relief afforded as to the separate cause of action, without the presence of others originally made parties to the suit."

It may be, under the Judiciary Act of March 3, 1887, c. 373, 24 Stat. 552, and August 13, 1888, c. 866, 25 Stat. 433, as under the act of March 3, 1875, c. 137, 18 Stat. 470, that the court may disregard the particular position of the parties as complainants or defendants, assigned to them by the pleader, for the purpose of determining the right of removal, *Harter* v. *Kernochan,* 103 U. S. 562, and the matter in dispute may be ascertained by arranging the parties to the suit on opposite sides of the dispute, and if by such an arrangement it appears that those on one side are all citizens of different States from those on the other, the suit may be removed. *Removal Cases,* 100 U. S. 457; *Ayers* v. *Chicago,* 101 U. S. 184.

The plaintiffs in error in the present cases seek to sustain the right of removal by the application of this rule; but it. will not avail them, for if the parties are arranged on opposite sides of the primary and controlling matter in dispute, we shall have the three complainants, together with the Phenix Insurance Company, a corporation of the State of New York; the Union Marine Insurance Company, Limited, of London, England; the British and Foreign Insurance Company of Liverpool, England, and the Standard Marine Insurance Company, Limited, of England, on one side, and the railroad company, the compress company, and the fire insurance com-

panies, together with the other defendants, as parties on the other side.

Now, as thus arranged, we have two alien corporations on the side of the complainants, and two alien fire insurance companies (the Liverpool, London and Globe Insurance Company, and the Royal Insurance Company) on the side of the defendants. Under such position, the alien petitioners would not be entitled to removal; besides, it is settled by *King* v. *Cornell*, 106 U. S. 395, that subdivision two of section 639 of the Revised Statutes was repealed by the act of 1875, so that an alien sued with a citizen had no right of removal, and this subdivision two of that section was not restored by the act of March 3, 1887; hence, an alien, in the position of the alien petitioners, in the present case, would have no right to remove the cause on the ground of a separable controversy.

Again, the parties being arranged, as above, according to the matter in dispute, we have the Phenix Insurance Company of New York in the position of plaintiff, with the Mutual Fire Insurance Company of New York, (No. 809,) the Continental Insurance Company, (No. 810,) and the Fire Association, (No. 811,) corporations of the same State, applying for the removal. It is too clear to require the citation of authorities that in this position of the New York corporations, those occupying the position of defendants had no right of removal.

It is further shown by the pleadings that the Phenix Insurance Company in its cross-bill made a defendant of the Newport News and Mississippi Valley Company, a corporation organized under the laws of Connecticut, which was a carrier from Memphis to points east, and had a contract with the compress company like that of the Cairo, Vincennes and Chicago Railroad Company, to insure cotton to be carried over its line, under which arrangement it had issued bills of lading to various parties insured by the Phenix Insurance Company; and that company, after payment of the losses by its cross-bill, sought the same relief against the Newport News and Mississippi Valley Company which was sought against the Cairo, Vincennes and Chicago Railroad Company. So that to the cross-bill of the Phenix Company there were two

Connecticut defendants, viz., the National Fire Insurance Company, (No. 808,) and the Newport News and Mississippi Valley Company, and the relief sought made both of these corporations necessary and indispensable parties. The Connecticut corporations could not in this situation of the parties, if no other objection existed, be entitled to remove the cause.

In respect to the two other plaintiffs in error, the Merchants' Cotton Press and Storage Company, (No. 807,) and the Mutual Fire Insurance Company, (No. 809,) it appears that neither of these parties made application to remove the cause from the chancery court of Shelby County. So that neither of them is in position to assign error as to the action of the court in denying the other parties the right of removal. In *Rand* v. *Walker*, 117 U. S. 340, 345, it was held that the right to take steps for the removal of a cause to the Circuit Court of the United States, on the ground of a separable controversy, was confined to the parties actually interested in such controversy. In that case the court said on this subject: "That neither of the parties to the controversy, if it be separable, a question which we do not decide, have petitioned for removal, and the right to remove a suit on the ground of a separable controversy is, by the statute, confined to the parties actually interested in such controversy."

It is, therefore, we think, clear that whether the cause be looked at as a whole, or whether it be considered under any adjustment or arrangement of the parties on opposite sides of the matter in dispute, there was no right of removal on the part of the several plaintiffs in error, or either of them.

The remaining assignment of error based upon the alleged allowance by the local agent of the railroad company of special rates, rebates, or drawbacks to Jones Brothers & Company which, it is claimed, rendered the bills of lading issued by the railroad company to the owners or consignees of the cotton void, so that the marine insurance companies, who had paid the losses, could have no right upon such bills of lading against the railroad company, or the fire insurance companies, needs but little consideration. The Supreme Court of the State disposed of this question as follows: "This fact of

special rate and rebate is denied, and it is a matter of controversy and conflict of evidence, and it is also insisted in answer to this by plaintiffs that the interstate commerce law does not apply for the reason that the evidence disproves any 'common control' over the river and rail route. We are of opinion, however, and rest our decision upon the ground that if it were assumed that the law was applicable, and the fact of agreement for rebate and special rate proven, it would not prevent liability on the part of the carrier for the freight received and covered by insurance in the hands of the carrier's agent. The law makes such agreements as to rebate, etc., void, but does not make the contract of affreightment otherwise void, and we think there is nothing in the law or the policy of it which requires a construction that would excuse a carrier from all liability when it made such a contract in connection with that for receipt and transportation of freight. Such a construction would encourage rather than discourage such unlawful agreements for rebates. The carrier might prefer them to liability for the freight. Such a contract as to rebate would be void, and . . . could not be enforced; but we think the shipper could nevertheless recover for loss of his freight through the carrier's negligence and, incidentally, of carrier's insurance. No different construction has yet been put upon the interstate commerce law so far as we are advised, and we decline to give it any other." We concur in the correctness of this conclusion of the State Supreme Court.

Jones Brothers & Company were either the agents of the owners or consignees of the cotton, or the sellers thereof to eastern consignees, and the rebates or drawbacks, which they claimed to have been allowed, if allowed at all, according to the testimony of one of the members of the firm, was a private benefit which the firm secured, and, so far as appears, without the knowledge or consent of the owners or consignees of the cotton. Under such circumstances, if such rebates were paid or allowed to the firm by the agent of the railroad company, it is difficult to understand upon what principle such an allowance would vitiate or render void the bills of lading which the railroad company issued to the owners of the cotton. It is

still more difficult to understand how the compress company, or the fire insurance companies, could avail themselves of the arrangement, even regarding it as illegal, between the agent of the railroad company and Jones Brothers & Company. They were not parties to it, and they were not affected by it in any way, shape, or form.

There is nothing in the interstate commerce law which vitiates bills of lading, or which, by reason of such allowance to Jones Brothers & Company, if actually made, would invalidate the contract of affreightment or exempt the railroad company from liability on its bills of lading.

The principles laid down in *Interstate Commerce Commission* v. *Baltimore & Ohio Railroad*, 145 U. S. 263, fall far short of establishing that the alleged allowance of rebate to Jones Brothers & Company would render the railroad company's bills of lading invalid and defeat the right of the marine insurance companies, who had paid the losses, to subrogation against the railroad company on bills of lading issued to the owners or consignees of the cotton, who are not shown to have known of, or consented to, the railroad company's agent giving such rebates.

We are, therefore, of opinion that the Federal questions presented by the assignments of error were not well taken and are not sustained, and that the judgment of the Supreme Court of the State of Tennessee in all of the cases must be

*Affirmed.*