### ADAMS EXPRESS CO., v. DARDEN.

(Circuit Court of Appeals, Sixth Circuit.   January 9, 1923.)

No. 3712.

**1. Carriers ⬩⟲23—Cummins Amendment of 1915 against limitation of liability cannot be defeated by construction.**

The express provision of the Cummins Amendment to the Interstate Commerce Act that an interstate carrier shall be liable for the full actual loss, damage or injury to property caused by it, notwithstanding any limitation of liability or limitation of the amount of recovery, and that any limitation of liability is unlawful and void, cannot be defeated by construction based on the convenience of the clause, nor on any argument based upon the history of the statute, or of the Carmack Amendment (Comp. St. §§ 8604a, 8604aa), nor on the policy of the later Cummins Amendment (Comp. St. § 8604a).

**2. Carriers ⬩⟲35—Rebate provision in a contract does not prevent recovery for loss of goods.**

The fact that a contract for the shipment of race horses specified a lower rate than the tariff rate for animals of that value, so as to be in effect the giving and receiving of a rebate on the shipment, which subjected both carrier and shipper to criminal punishment, but which was not declared by the Interstate Commerce Act prohibiting such rebates, to make the contract void, does not prevent the shipper from recovering the value of horses killed by the carrier's negligence.

⬩⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Contracts ☞107—Violation of statute which imposes other penalties general-ly does not make contract unenforceable.**

When a statute imposes specific penalties for its violation by an act not otherwise malum in se, and the purpose of the statute can be accomplished without declaring contracts in violation thereof illegal, the inference is that it is not the legislative intent to render such contracts illegal and unenforceable.

**4. Carriers ☞35—Cannot avoid liability for negligence as bailee on grounds of invalidity of contract.**

A carrier which has accepted horses for transportation becomes a bailee thereof, and cannot escape liability for its own negligence while in possession of the horses, on the ground that the original contract of carriage was illegal.

**5. Carriers ☞35—Punishment of shipper for accepting rebate does not affect validity of contract.**

The fact that the original Interstate Commerce Act, which made rebates unlawful, did not prescribe any punishment for a shipper who accepted rebates, does not affect the application of the construction of that act as not invalidating the contract of carriage because of the rebate provision to contracts made under subsequent amendments which did impose punishment on the shipper.

**6. Carriers ☞228(3)—Evidence of agreement to furnish different kind of car for shipment of race horses held competent.**

In an action for the loss of plaintiff's race horses during shipment by express, where the negligence relied on was the furnishing of an insecure wooden car which was demolished in a wreck, evidence of the carrier's agreement to furnish a different kind of car was pertinent to the question of negligence.

**7. Appeal and error ☞977(1)—New trial ☞6—Motion for new trial is addressed to discretion of trial court.**

A motion for new trial is addressed to the discretion of the trial court, and its denial is not ground for reversal.

In Error to the District Court of the United States for the Middle District of Tennessee; Edward T. Sanford, Judge.

Action at law by W. W. Darden against the Adams Express Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. L. Granbery, of Nashville, Tenn. (Maxwell & Ramsey, of Cincinnati, Ohio, and Bass & Sims, of Nashville, Tenn., on the brief), for plaintiff in error.

K. T. McConnico, of Nashville, Tenn. (Gordon & Laurent, of Louisville, Ky., John W. Gaines, Jr., and Pitts & McConnico, all of Nashville, Tenn., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. On July 7, 1915, while the Cummins Amendment to the Interstate Commerce Act (Comp. St. § 8604a) was in force, defendant in error (whom we shall call plaintiff) delivered six horses to the Adams Express Company, at Latonia, Ky., for shipment to Windsor, Ontario. The horses were loaded in one end of a car furnished by the express company; the other end being occupied by seven horses owned severally by one Seamster and others. The rate charged by the express company was $165 for the car, one-half of which amount was paid by plaintiff and the other half by those who had the

other end of the car. In the shipping contract, signed by Seamster, as "owner or duly authorized agent of the owner" (plaintiff not being present), the horses were described as "13 running horses," of a value (which the printed form of contract says was stated by the shipper) of $100 each. The classification minimum rates (as shown by the shipping contract) were stated therein as applicable only when the value of the carload of horses did not exceed $100 for each horse, accompanied by its paraphernalia (such as sulkies, harness, etc.), of a stated additional value. If the value of the shipment exceeded the value so stated, an additional charge for such excess, by way of percentage graduated according to first-class rates per 100 pounds, was provided for. The express company's agent knew that plaintiff's horses were valuable. The tariff rates, if based upon actual values, would greatly exceed those paid. Upon the trial, in response to the court's question whether it was insisted that there was "any actual fraud or misrepresentation," defendant's counsel said:

"No; not involving moral turpitude. We do not claim there was any deception." [1]

Soon after leaving Latonia the car in question was wrecked. and five of plaintiff's horses were killed, by reason of the alleged negligence of the express company largely in providing for the shipment a wooden car alleged to have been old and rotten. On trial to a jury plaintiff recovered verdict and judgment for $32,500, as the value of his horses so killed. In this court the conclusion that such killing was proximately due to the negligence of the express company is not challenged—defendant's sole ultimate contention on the merits being that the shipping contract was wholly void and unenforceable by plaintiff, because it involved the giving and acceptance of a rebate from defendant's usual tariff rates, in violation of the provisions of the Interstate Commerce Act.

[1] This concession was properly made. There was no evidence that plaintiff misrepresented the value of his horses, unless in the bare fact that the value of $100 each was given in the shipping contract in the manner above stated; nor was there any direct evidence that plaintiff knew he was paying less than the proper tariff rates, except as he is legally bound to know the published rates. He testified, without dispute, that the express company's agent solicited the transportation on the race track "and around the stables," knew plaintiff's horses and that they were entered in races in Canada (as above stated, they were described in the shipping contract as "running horses"), quoted the rate of $165 per car, and no other rate; that plaintiff knew of no other express rate than the car rate (he had shipped these horses by freight from Nashville to Louisville under a "limited liability" contract, but said he paid more for shipment by express than by freight; that he had not "waived any of his rights for value" and understood that he was getting a "higher protection"); that no valuation was given by him or asked for; that no tariffs were shown him, and no written contract seen or signed by him; that he authorized no one to sign a contract for him. and that the men in charge of the horses did not know their value; that plaintiff had left for Nashville after arranging for the shipment and before it was made. The charge to the jury was not sent up, for the reason that neither party excepted to it or asked for additional instructions. While some of the above testimony was objected to, no error is assigned in this court upon its admission. It is perhaps important only as it repels intentional fraud on plaintiff's part.

The Carmack Amendment (Act June 26, 1906, c. 3591, 34 Stat. 595 [Comp. St. §§ 8604a, 8604aa]), as construed by the Supreme Court, permitted an interstate carrier, by a fair, open, and reasonable agreement contained in the shipping contract or bill of lading, to limit the amount recoverable by the shipper to an agreed or conventional value, made for the purpose of obtaining the lower of two or more rates proportioned to the amount of the risk; it being held that such contracts did not contravene the settled principles of the common law preventing a carrier from contracting against its liability for loss by negligence. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Wells, Fargo & Co. v. Neiman-Marcus Co., 227 U. S. 469, 475, 33 Sup. Ct. 267, 57 L. Ed. 600; Pierce Co. v. Wells, Fargo & Co., 236 U. S. 278, 283, 35 Sup. Ct. 351, 59 L. Ed. 576. And until the passage of the Cummins Amendment (Act March 4, 1915, c. 176, 38 Stat. 1196) it was the lawfully established practice of interstate carriers to provide by their tariffs for limitation of the amount of liability corresponding to the rate paid. The Cummins Amendment, however, declared that the interstate carrier—

"shall be liable to the lawful holder of said receipt or bill of lading, or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it * * * notwithstanding any limitation of liability or limitation of the amount of recovery, or representation or agreement as to value in any such receipt or bill of lading or in any contract, rule or regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void." [2]

[1] Defendant properly concedes that the effect of the Cummins Amendment was to prohibit a limitation upon the amount of the carrier's liability in case it is liable at all (Chicago, etc., Ry. Co. v. Mc-Caull-Dinsmore Co., 253 U. S. 97, 100, 40 Sup. Ct. 504, 64 L. Ed. 801; 33 Interst. Com. R. 682, 693), and that no such attempted limitation is found in the contract before us, which was made while the Cummins Amendment was in force. The situation as respects the contract in this case is not changed or affected by the second Cummins Amendment (Act Aug. 9, 1916, c. 301, 39 Stat. 441 [Comp. St. § 8604a], passed more than a year after the making of the contract and shipment here in question) which second amendment excepts from the prohibition against limitation of liability "property, *except ordinary live stock*, received for transportation, concerning which the carrier shall have been or shall hereafter be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing, as the released value of the property," etc. As said by the Supreme Court in Chicago, etc., Ry. Co. v. McCaull-Dinsmore Co., supra, 253 U. S. at page 100, 40 Sup. Ct. 505, 64 L. Ed. 801

[2] The amendment contained a proviso permitting the carrier to require the shipper specifically to state the value of the goods when hidden from view by wrapping, boxing, or other means, and relieving the carrier from liability beyond the amount so stated; but this proviso has, of course, no relation to the case under consideration.

(in construing the clause of the Cummins Amendment which we have quoted, as applied to the basis and measure of recoverable damages for failure to deliver):

"Neither the convenience of the clause, nor any argument based upon the history of the statute or upon the policy of the later Act of August 9, 1916, c. 301, 39 Stat. 441, can prevail against what we understand to be the meaning of the words." [3]

[2] It remains to consider whether the mere giving and receiving of rebate from the applicable tariff rate rendered the contract of shipment here in question void and unenforceable. Defendant's argument in that respect is briefly that such giving or acceptance of rebates was, by the act in force when the shipment was had, made unlawful, and subjected both the carrier and the shipper to penalty therefor, and that the case is therefore governed by the general rule that an illegal contract will not be enforced by the courts.

Whether or not the contract of shipment is nonenforceable depends upon the public policy of the United States in that respect, as evidenced by its statutes and the decisions of its courts. While the statute makes all rebating, and contracts therefor, unlawful and unenforceable, it is to be noted that, notwithstanding the fact that rebating has been forbidden for the past 35 years, and notwithstanding the numerous amendments of the original act, the statute has never declared the contract of carriage unenforceable by reason of rebating, or the carrier thereby absolved from liability for negligent failure to deliver. The statute in force when the shipment in question was made provided drastic remedies and penalties for rebating. Not only were both carrier and shipper made liable to criminal punishment, but the shipper was made liable to the United States for three times the amount of the rebate received or accepted. More than this, a carrier, at least when not in default, is entitled to recover from the shipper any deficiency of rates paid below the legal tariff rates. Congress presumably believed that public policy, evidenced by the statutes enacted, as has frequently been declared, in the interest of the shipping public, would be best subserved by holding the carrier liable for the value of the shipment lost or destroyed through its negligence, notwithstanding a violation of the provisions against rebating, for which specific penalties and remedies were otherwise provided.

[3] It is now well settled that, when a statute imposes specific penalties for its violation, where the act is not malum in se, and the purpose of the statute can be accomplished without declaring contracts in violation thereof illegal, the inference is that it was not the legislative intent to render such contracts illegal and unenforceable. Harris v. Runnels, 12 How. 79, 84, et seq., 13 L. Ed. 901; Farmers' & Mechanics' Nat. Bank v. Deering, 91 U. S. 29, 35, 23 L. Ed. 196; Fritts v. Palmer, 132 U. S. 282, 289, 293, 10 Sup. Ct. 93, 33 L. Ed. 317; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 545, 22 Sup. Ct. 431, 46 L. Ed. 679;

[3] We have assumed, for the purposes only of this opinion, but without so deciding, that it was competent for defendant to make varying rates for carriage, dependent upon the value of the shipment, so long as no attempt was made to limit liability below the actual loss, damage, or injury suffered.

Yates v. Jones National Bank, 206 U. S. 158, 179, 27 Sup. Ct. 638, 51 L. Ed. 1002; Dunlop v. Mercer (C. C. A. 8) 156 Fed. 545, 555, 86 C. C. A. 435. This rule is not in conflict with, but is an exception to, the general rule that an action cannot be maintained upon an illegal contract.[4]

Harris v. Runnels, supra, was a suit upon a note given upon a sale made in violation of the statute. Bank v. Deering, supra, was a suit upon a note whose usurious character was set up in defense. Fritts v. Palmer was an action of ejectment, the defense being that plaintiff violated the laws of the state when it purchased the property in question. Connolly v. Union Sewer Pipe Co., supra, was a suit for the purchase price of goods sold, against a defense of sale in pursuance of an illegal combination.

[4] Moreover, in the instant case plaintiff planted its right to recover, not on defendant's liability as an insurer, but on its positive and proximate negligence, largely in making the shipment in question in a wholly unfit car. Defendant, having accepted plaintiff's horses for transportation as a common carrier, became a bailee thereof, and cannot escape liability for its own negligence while in possession of the horses on the ground that the original contract of carriage was illegal. Direct authority in support of the conclusion below is not wanting. In Merchants', etc., Co. v. Insurance Co., 151 U. S. 368, 14 Sup. Ct. 367, 38 L. Ed. 195, which involved the loss by fire of cotton shipped by rail, it was sought, by proof on the trial, to show that special rates, rebates, or drawbacks had been given in violation of the interstate commerce laws and regulations. It was held, on error to a state court, that there was nothing in the Interstate Commerce Law which vitiates bills of lading or which by an allowance of rebates, if actually made, would invalidate the contract of affreightment, or exempt the railroad company from liability on its bills of lading. The court (151 U. S. 387, 388, 14 Sup. Ct. 374, 38 L. Ed. 195) quoted with approval the holding of the state Supreme Court that, assuming—

"that the law was applicable, and the fact of agreement for rebate and special rate proven, it would not prevent liability on the part of the carrier for the freight received. * * * The law makes such agreements as to rebate, etc., void, but it does not make the contract of affreightment otherwise void, and we think there is nothing in the law or the policy of it which requires a construction that would excuse a carrier from all liability when it made such contract in connection with that for receipt and transportation of freight. Such a construction would encourage rather than discourage such unlawful agreements for rebates. The carrier might prefer them to liability for the freight. Such a contract as to rebate would be void and * * * could not be enforced; but we think the shipper could nevertheless

---

[4] In Dunlop v. Mercer, supra, 156 Fed. at page 555, 86 C. C. A. at page 445, Judge Sanborn used this language: "The general rule that an illegal contract is void and unenforceable is, however, not without exception. It is not universal in its application. It is qualified by the exception that where a contract is not evil in itself, and its invalidity is not denounced as a penalty by the express terms of or by rational implication from the language of the statute which it violates, and that statute prescribes other specific penalties, it is not the province of the court to do so, and they will not thus affix an additional penalty not directed by the law-making power,"—citing Harris v. Runnels, supra, Fritts v. Palmer, supra, and numerous other cases.

recover for loss of his freight through the carrier's negligence. * * * No different construction has yet been put upon the interstate commerce law so far as we are advised, and we decline to give it any other."

The Supreme Court added its own express statement as follows:

"There is nothing in the Interstate Commerce Law which vitiates bills of lading, or which, by reason of such allowance, * * * if actually made, would invalidate the contract of affreightment or exempt the railroad company from liability on its bills of lading."

[5] True, this decision was concerned with the original Interstate Commerce Act of 1887 (Act Feb. 4, 1887, 24 Stat. c. 104, p. 379 et seq.), which did not punish the shipper for accepting or receiving rebates; but it did, in express terms, prohibit unjust discrimination in rates, declared such discrimination unlawful, required the carrier to file copies of its schedules of rates, made it unlawful for the carrier to charge, collect, or receive a greater or less compensation than provided in the published schedules, and for willful violation of the act made the carrier guilty of a misdemeanor. Plainly, therefore, such rebates were then, not only contrary to the public policy of the United States, but were positively illegal (see Armour v. United States, 209 U. S. at page 69, 28 Sup. Ct. 428, 52 L. Ed. 681). That the shipper was not punishable does not alter the case in this respect.

We are not cited to, nor have we found, any decision of the Supreme Court which, in our opinion, as applied to the facts of the instant case, contravenes or discredits the decision in the Cotton Compress Case just cited.[5]

[6, 7] It results from the views we have expressed that the action of the trial court in denying defendant's motions to strike out certain of the testimony was either not erroneous or nonprejudicial. The evidence of the value of the horses was not incompetent because different from that stated in the written shipping contract. The Cummins Amendment imposed liability for full value "notwithstanding any * * * agreement as to value * * * in any contract." The evidence of defendant's agreement to furnish a different kind of car was pertinent to the question of negligence. As payment of an insufficient rate did not make the contract unenforceable, the motions to di-

---

[5] The cases cited by defendant as declaring (or perhaps intimating) a different rule are not, in our opinion, in point. For example: In Chicago & Alton Ry. v. Kirby, 225 U. S. 155, 166, 32 Sup. Ct. 648, 650 (56 L. Ed. 1033, Ann. Cas. 1914A, 501) the special contract sued upon was for an expedited service, for which no rates existed, and the contract was for that reason illegal. "There was no count based upon the carrier's liability for negligence in not promptly shipping and delivering. The judgment was rested upon the damages resulting from a breach of the special contract, and not at all upon the liability of the carrier otherwise." Missouri, K. & T. Ry. Co. v. Harriman, 227 U. S. 657, 671, 33 Sup. Ct. 397, 57 L. Ed. 690, Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683, and Gt. Northern Ry. v. O'Connor, 232 U. S. at page 515, 34 Sup. Ct. 380, 58 L. Ed. 703, were cases of alleged undervaluation for the purpose of obtaining the lower of two published rates, previous to the Cummins Amendment, the effect of which had already been declared in Wells, Fargo & Co. v. Nieman-Marcus Co., 227 U. S. 469, 475, 33 Sup. Ct. 267, 57 L. Ed. 600, to be that the shipper was estopped, by its misrepresentation, to recover more than the value declared to obtain the rate. Neither of the cases involved rebates.

rect verdict were properly denied. The denial of motion for new trial was addressed to the discretion of the trial court.

In our opinion the judgment of the District Court was right and should be affirmed.