1230

In re TEXAS EASTERN TRANSMISSION CORP. PCB CONTAMINATION INSURANCE COVERAGE LITIGATION (MDL No. 764).

ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES, LTD.; National Surety Corporation

v.

TEXAS EASTERN TRANSMISSION CORPORATION; Fidelity & Casualty Insurance Company of New York; Certain Underwriters at Lloyds of London, Including The Insurance Company of Ireland; Aetna Casualty and Surety Company; American Home Assurance Company; Boston Old Colony Insurance Company; Continental Casualty Insurance Company; First State Insurance Company; Highlands Insurance Company; The Home Insurance Company; Insurance Company of North America; Insurance Company of the State of Pennsylvania; International Insurance Company; Lexington Insurance Company; Midland Insurance Company; Mutual Marine Insurance Company; Prudential Reinsurance Company; Ranger Insurance Company; Republic Insurance Company; Stonewall Insurance Company; Pennsylvania Insurance Guaranty Association; United States of America; United States Environmental Protection Agency (D.C. Civil No. 88–02126).

The FIDELITY & CASUALTY CO. OF NEW YORK

v.

The TEXAS EASTERN TRANSMISSION CORP. (D.C. Civil No. 88–05039).

TEXAS EASTERN TRANSMISSION CORPORATION

v.

FIDELITY AND CASUALTY COMPANY OF NEW YORK; Associated Electric & Gas Insurance Services, Ltd.; Aetna Casualty and Surety Company; American Home Assurance Company, a/k/a American Home Insurance Company; Boston

Old Colony Insurance Company; Cigna Insurance Company; Continental Casualty Company; Employers Mutual Casualty Company; First State Insurance Company; Highlands Insurance Company; The Home Insurance Company; The Insurance Company of North America; Insurance Company of the State of Pennsylvania; International Insurance Company; Lexington Insurance Company; Midland Insurance Company; National Surety Corporation; Prudential Reinsurance Company; Ranger Insurance Company; Republic Insurance Company; Stonewall Insurance Company; United States Fire Insurance Company; Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (D.C. Civil No. 88–05707),

Texas Eastern Transmission Corporation, Appellant.

No. 92–1638.

United States Court of Appeals, Third Circuit.

Argued April 7, 1993.

Reargued Sept. 30, 1993.

Decided Jan. 10, 1994.

**1232**

Peter J. Nickles (argued), Coleman S. Hicks, Covington & Burling, Washington, DC, Charles Alan Wright, Austin, Texas, counsel for appellant Texas Eastern Transmission Corporation.

Leonard L. Rivkin, John L. Rivkin, Erica B. Garay, Rivkin, Radler & Kremer, Uniondale, NY, John C. Sullivan, Manta & Welge, Philadelphia, PA, counsel for appellees Associated Electric & Gas Insurance Services, Ltd. and National Surety Corporation.

John Mattioni, Mattioni, Mattioni & Mattioni, Philadelphia, PA, Margaret H. Warner, Lawrence E. Carr, Jr., Peter K. Tompa,

William J. Carter, Carr, Goodson & Lee, Washington, DC, counsel for appellees Fidelity & Casualty Company of New York and Boston Old Colony Insurance Company.

Richard M. Shusterman, Regina B. Mapes, White & Williams, Philadelphia, PA, counsel for appellee Insurance Company of North America.

Edward Zampino, Victor C. Harwood, III, Brian J. Coyle, Harwood Lloyd, Hackensack, NJ, Edward M. Dunham, Jr., Miller, Dunham, Doering & Munson, Philadelphia, PA, counsel for appellee Aetna Casualty & Surety Company.

Marjorie H. Mintzer, Robin S. Einbinder, Sheft & Sheft, New York, NY, Mitchell S. Pinsly, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, PA, counsel for appellees American Home Assurance Company; Highland Insurance Group; Insurance Company of the State of Pennsylvania; Lexington Insurance Company; Ranger Insurance Company; Republic Insurance Company; and Stonewall Underwriters, Inc.

Stephen Sonderby, Jody Pucel, Haskell & Perrin, Chicago, IL, counsel for appellee Continental Casualty Company.

Ignatius J. Melito, Barry S. Bendetowies, Siff, Rosen & Parker, P.C., New York, NY, counsel for appellee First State Insurance Company.

David Richman, Colleen Connelly, Pepper, Hamilton & Scheetz, Philadelphia, PA, counsel for appellee Home Insurance Company.

Kevin E. Wolff, McElroy, Deutsch & Mulvaney, Morristown, NJ, Christopher L. Musmanno, Lorraine M. Armenti, McElroy, Deutsch & Mulvaney, Morristown, NJ, Thomas C. DeLorenzo, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, counsel for appellees International Insurance Company and United States Fire Insurance Company.

Michael J. Merlo, Karen L. Douglas, Michael R. Gregg, Merlo, Chapello & Douglas, Ltd., Chicago, IL, counsel for appellee Prudential Reinsurance Company.

Lise Luborsky, Joseph M. Hankins, Britt, Hankins, Schaible & Moughan, Philadelphia,

PA, counsel for appellee Pennsylvania Insurance Guaranty Association.

Wayne Partenheimer, Law Offices of David L. Rohde, Philadelphia, PA, K. Thomas Shahriari, Mitchell A. Stearn, Gilberg & Kurent, Washington, DC, counsel for appellee National Surety Corporation.

Mary Ann D'Amato (argued), Robert M. Flannery, Mendes & Mount, New York, NY, counsel for appellee Certain London Market Insurance Companies and Insurance Company of Ireland.

Dan Morales, Attorney General, Ms. Esther L. Hajdar, Deputy Appellate Coordinator, Office of the Attorney General of Texas, Austin, TX, counsel for amicus appellant State of Texas.

Thomas W. Brunner, Robert B. Bell, Nancy J. Lemay, Wiley, Rein & Fielding, Washington, DC, counsel for amicus appellee Insurance Environmental Litigation Association.

Before: MANSMANN, ALITO and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This a companion opinion to *Fidelity & Casualty Co. of New York v. The Texas Eastern Transmission Corp.*, 15 F.3d 1249 (3d Cir.1994), an opinion filed today which affirms the district court's determination of liability in three cases consolidated for appeal before us. The three cases are *Fidelity & Casualty Co. of New York v. The Texas Eastern Transmission Corp.*, (hereinafter the "*F & C*" action) originally filed in the Northern District of Texas, *Texas Eastern Transmission Corp. v. Fidelity and Casualty Co. of New York et al.*, (hereinafter the "*Texas Eastern*" action) originally filed in a Texas state court and later removed to the Southern District of Texas, and *Associated Electric & Gas Insurance Services Ltd. et al. v. Texas Eastern Transmission Corp et al.* (hereinafter the "*AEGIS*" action) filed in the Eastern District of Pennsylvania. All three cases were later assigned by the Multi–District Litigation Panel to the district court below.

This opinion discusses the question of subject matter jurisdiction in the *Texas Eastern* action and the *AEGIS* action. We also address the question of jurisdiction in the *F & C* case to the extent that its jurisdiction based on diversity is impacted by our discussion of subject matter jurisdiction in the other two cases. That our discussion has to be bifurcated in two separate opinions results from a procedural anomaly: Texas Eastern sought rehearing in only two of the three cases—*Texas Eastern* and *AEGIS*—and only on the question of subject matter jurisdiction.

At issue in this panel rehearing is the district court's exercise of subject matter jurisdiction in *Texas Eastern* and *AEGIS* arising from insurance coverage for the cost of toxic PCB clean-up. The claims were filed after Texas Eastern Transmission Corporation's release, discharge and disposal into the environment of PCB-contaminated substances in the course of operating a natural gas pipeline extending from Texas and Louisiana to New Jersey.

Texas Eastern, the insured, appealed the decision of the district court, which granted summary judgment to Texas Eastern's insurance carriers, primarily on the basis that Texas Eastern breached its duty to provide the carriers timely notice of matters for which it would seek coverage, and in this way prejudiced the carriers. *In re Texas Eastern Transmission Corp. PCB Contamination Insurance Coverage Litigation*, No. MDL–764, 1992 WL 227847 (E.D.Pa. July 9, 1992). We affirmed in an unreported opinion filed May 28, 1993, 995 F.2d 219, after confirming that the district court had subject matter jurisdiction over all three cases. In the first of the three actions, the "*F & C*" action, subject matter jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332, and was not and is not now being contested by Texas Eastern. Subject matter jurisdiction in the remaining two actions, the "*AEGIS*" action and the "*Texas Eastern*" action, was derived from the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330 (original) and § 1441(d) (removal).

Thereafter, Texas Eastern filed a petition for rehearing challenging subject matter jurisdiction in the two cases. On August 18,

1993, we ordered panel rehearing and stayed the mandate in all three cases consolidated in this appeal. On January 6, 1994, we vacated our unreported opinion.

This opinion addresses the jurisdictional issues raised in the petition for rehearing, which was directed *only* to the question of subject matter jurisdiction in *AEGIS* and *Texas Eastern*. In addition, because Texas Eastern contended on appeal and reasserted on rehearing that the district court lacked jurisdiction over the counterclaim defendants in the *F & C* case, and hence should have stayed *F & C* in favor of an allegedly more comprehensive action which Texas Eastern had commenced in a Texas state court, we address this challenge to the district court's jurisdiction in *F & C*. In a separate opinion filed simultaneously with this, we in effect reinstate the portion of our earlier opinion addressing the substantive merits of the issues on appeal from the order of the district court, as these issues were not challenged in the petition and were not the subject of the rehearing. *See Dunn v. HOVIC*, 1 F.3d 1362 (1993) (reinstating earlier opinion as to matters not subject of rehearing in banc); *Dunn v. HOVIC*, 1 F.3d 1371 (1993) (addressing only those issues which were subject of rehearing in banc).

## I.

A brief statement of the facts appears in the related opinion filed simultaneously with this one. A more detailed statement of the facts appears in the district court's opinion. Here we outline the nature of the three cases in question and the jurisdictional challenges raised in the petition for rehearing.

After Texas Eastern's August 1987 notice to its insurers that it was negotiating with federal and state agencies over the PCB contamination of several of its properties, Fidelity & Casualty Company of New York, Texas Eastern's primary excess liability insurer, filed the first of the three actions, the "*F & C*" action, in the United States District Court for the Northern District of Texas,

seeking a declaratory judgment disclaiming liability. Subject matter jurisdiction was premised on diversity and is not challenged. Texas Eastern unsuccessfully moved to dismiss or stay the *F & C* action in favor of a New Jersey state court action which Texas Eastern had already commenced against all of its insurers.[1]

In the second action, the "AEGIS" action, two of Texas Eastern's excess insurers, Associated Electric and Base Service, Ltd. and National Surety Corporation, filed a comprehensive declaratory judgment action against Texas Eastern and its other insurance carriers, primary or excess, in the United States District Court for the Eastern District of Pennsylvania. The district court premised original subject matter jurisdiction over the *AEGIS* case on the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1330, based on the presence as a party defendant of the Insurance Company of Ireland, Ltd., (ICI). ICI is a "foreign state" under 28 U.S.C. § 1603(a) of the FSIA having no immunity with regard to the commercial claims brought against it in the *AEGIS* action. The Immunities Act provides for federal jurisdiction in civil commercial actions brought "against" a foreign state.

The third and final action, the "Texas Eastern" action, was commenced by Texas Eastern in a Texas state court against all of its insurers, seeking declaratory judgment and damages. This action was, in effect, a refiling of the earlier dismissed action which Texas Eastern had initiated in the New Jersey state court. Pursuant to 28 U.S.C. § 1441(d) of the FSIA, ICI removed *Texas Eastern* to the United States District Court for the Southern District of Texas. Section 1441(d) permits removal of a civil action "against a foreign state" as the term "foreign state" is defined in 28 U.S.C. § 1603.

The *F & C* action was transferred to the federal district court in eastern Pennsylvania and consolidated with *AEGIS* for pretrial proceedings. The *Texas Eastern* action was also consolidated for pretrial purposes with

---

**1.** The action in the New Jersey state court was titled *Texas Eastern Transmission Corporation v. Fidelity & Casualty Company,* and was docketed as No. WO–30685–87 (N.J.Sup.Ct., filed December 19, 1987). It was dismissed on March 17, 1988, on the ground of forum non conveniens. Texas Eastern did not appeal the dismissal.

*AEGIS* after it was removed to the federal court.

In seeking vacatur of the district court's judgment in all three cases and to adjudicate its coverage claims in state court, Texas Eastern argues that the district court erroneously assumed FSIA jurisdiction; hence, it argues that the *Texas Eastern* case should have been remanded to the Texas state court, the *AEGIS* case should have been dismissed for lack of subject matter jurisdiction, and the *F & C* case should have been sent back to the Texas federal court where it likely would have been dismissed or stayed in deference to the state court proceeding.

Texas Eastern does not challenge diversity jurisdiction between the original parties in the *F & C* case, yet in our view we deem it significant that in the *F & C* case, Texas Eastern committed itself to two important actions: (1) it asserted counterclaims against *F & C* and (2) it joined all other parties in these combined cases as co-defendants in the counterclaims. What started out as an action between only The Fidelity & Casualty Co. of New York and Texas Eastern then became, through Texas Eastern's actions, a case involving *all* the carriers in this litigation.

On appeal from the district court's grant of summary judgment in favor of the insurers, however, Texas Eastern asserts a contention that it did not raise below: now, for the first time, it argues that jurisdiction over the counterclaim was improper. Texas Eastern further asserts that, assuming ICI is a foreign state within the meaning of § 1603, FSIA jurisdiction over *AEGIS* was precluded by mandatory realignment of the parties, which would have adjusted ICI's nominal status as defendant to plaintiff. Furthermore, Texas Eastern asserts that ICI contractually waived any right it had under the FSIA to remove in the *Texas Eastern* case.

We have jurisdiction over a final decision of the district court pursuant to 28 U.S.C. § 1291. We rehear matters which were the subject of our opinion of May 28, 1993, pursuant to Federal Rules of Appellate Procedure 35 and 40.

## II.

We address the question of jurisdiction in each of the three cases seriatim. The substantive merits of the district court's holding in favor of the insurance carriers is addressed in an opinion filed simultaneously with this one. *Fidelity & Casualty Co. of New York v. The Texas Eastern Transmission Corp.*, 15 F.3d 1249 (3d Cir.1994).

### A. The *F & C* Case

On December 11, 1987, the *F & C* declaratory judgment action against Texas Eastern was commenced in federal district court in Texas. Texas Eastern filed an answer with counterclaims against virtually all of its excess insurers on December 15, 1988, after the *F & C* case had been transferred to the Eastern District of Pennsylvania and consolidated with the remaining two related cases. Although diversity jurisdiction between the two original parties, F & C and Texas Eastern, is undisputed, Texas Eastern now claims that the district court lacked jurisdiction over its counterclaims because Texas Eastern failed to state a basis in the Federal Rules of Civil Procedure for adding the excess insurers, failed to seek leave of court to join them, and did not execute service of process upon them; hence they were not made parties to the suit and the *F & C* action involved only the policies issued by its primary liability carrier.[2] *Fidelity and Casualty Co. of N.Y. v. Texas Eastern Transmission Corp.*, No. 88–5039.

Texas Eastern mounts the following argument. The complaint by F & C tracked a very narrow compass because it involved

---

2. The district court's decision at p. 7 granted summary judgment "on *all* claims against [the carriers]," and the order and judgment of the district court was entered in favor of *"all the carriers* and against Texas Eastern." Docket No. 88–5039, second entry of July 10, 1992 (emphasis added). Texas Eastern's failure to appeal that entry of judgment in the *F & C* action may be

construed as a waiver of its present contention that the excess carriers were not proper parties in the *F & C* action. Because we find ample other reason to reject Texas Eastern's jurisdictional challenge to the *F & C* case, the issue of Texas Eastern's waiver need not dispose of this matter.

only primary carrier liability. Outstanding at the same time in two other lawsuits was the question of liability of both primary and excess carriers. Therefore, had not the district court erroneously assumed it had jurisdiction over Texas Eastern's excess liability carriers in *F & C*, the district court would have dismissed the *F & C* law suit in favor of the more comprehensive state court action.[3]

### 1.

In deciding whether the excess insurers were parties to the *F & C* action, we note preliminarily that a party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum. *In re Real Estate Title and Settlement Services Antitrust Litigation*, 869 F.2d 760, 771 (3d Cir.), *cert. denied*, 493 U.S. 821, 110 S.Ct. 77, 107 L.Ed.2d 44 (1989). The *F & C* counterclaim defendants actively litigated the *F & C* action, failed to move to dismiss Texas Eastern's counterclaim for lack of service before litigating the motions for summary judgment, and, in fact, moved for summary judgment on other grounds.[4] Thus, we may infer that the counterclaim defendants effectively waived the defense of lack of personal jurisdiction based on the absence of service of process by acquiescing in personal jurisdiction. *See Zelson v. Thomforde*, 412 F.2d 56, 58–59 (3d Cir.1969); *United States v. Article*

of *Drug, etc.*, 362 F.2d 923, 926–27 (3d Cir. 1966). Since service of process is to provide notice of the pendency of the action, which the excess carriers clearly had, and goes to the question of in personam jurisdiction, in which the excess carriers have clearly acquiesced, the district court's exercise of personal jurisdiction over the excess carriers in the *F & C* action cannot be nullified by Texas Eastern's failure to cause summonses to be served on them. The district court implicitly adopted such a holding when it entered judgment in the *F & C* action "in favor of all carriers," and we affirm this resolution of the question of personal jurisdiction in *F & C*.

### 2.

Having disposed of contentions regarding personal jurisdiction, we must now consider the claim that the district court lacked subject matter jurisdiction over the non-diverse counterclaim defendants in the *F & C* action. In its counterclaim, Texas Eastern alleged ancillary jurisdiction over the excess insurers. Ancillary subject matter jurisdiction may be exercised over additional party defendants to a compulsory counterclaim, or over third party defendants. *See Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 633–34 (3d Cir.1961) (ancillary jurisdiction extends to subject matter of counterclaim arising out of transaction or occurrence which is subject matter of oppos-

---

**3.** The panel is in unanimous agreement that at this very late juncture in the prosecution of the *F & C* action it would be extremely imprudent to remand this case on the basis of what amounts to conjecture on the part of Texas Eastern, which cannot call into question the competence of a federal court to resolve matters of substantive state law. Although Judge Alito disagrees with the majority opinion on other grounds, he joins the majority in this regard.

**4.** In a supplemental stipulation regarding cross-claims and counterclaims entered into by F & C and the excess insurers, and approved and ordered by the district court on January 17, 1989, F & C and the excess insurers preserved the excess insurers' cross-claims in the *F & C* action. With the exception of the initial pleadings, the excess insurers failed to object to lack of service or in personam jurisdiction in the *F & C* case. In its answer and counterclaim, Texas Eastern asserted that *"[A]ll* of Texas Eastern's insurers must bear, *jointly and severally*, all indemnity,

damages, defense costs, costs, and reasonable attorney's fees resulting from any of the foregoing claims," belying Texas Eastern's own belief that its excess insurers were party to the *F & C* action, and undermining Texas Eastern's attempt to separate its claims against F & C from its claims against the excess insurers. Furthermore, Texas Eastern's motion for leave to amend pleadings included the excess insurers in the caption. Not only did the excess insurers respond on the merits, but the district court ruled, in an order of July 25, 1991, to dismiss all or specific claims against certain of the excess insurers, evidencing its assumption that the excess insurers were indeed parties to the *F & C* action. Finally, the district court's order and final judgment of July 9, 1992, granted "final judgment on *all claims* in favor of *all insurance carriers*." (Emphasis added.) This order was individually entered on the docket in all three cases, including the *F & C* action. Docket No. 88–5039, second entry of July 10, 1992.

ing party's claim of which court has jurisdiction, and such counterclaim is "compulsory"); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir.1980) (no independent jurisdictional basis required for third party claim when diversity jurisdiction obtained over original claim). Nevertheless, Texas Eastern now claims that the district court's exercise of subject matter jurisdiction over the counterclaims against the non-diverse excess insurers was a form of pendent party jurisdiction precluded by the Supreme Court in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (declining to exercise pendent party jurisdiction under Federal Tort Claims Act unless statute conferring jurisdiction over primary claim explicitly confers jurisdiction over pendent party claim). Texas Eastern argues that neither the diversity statute, 28 U.S.C. § 1332, upon which jurisdiction over the original claim lies, nor any other arguably applicable federal statute, authorizes such jurisdiction over the excess insurers.[5]

In this regard, we note initially that the Supreme Court has carefully distinguished a non-federal claim asserted by a *plaintiff* which can be joined with a federal cause of action arising from the same transaction despite its destruction of complete diversity, from ancillary jurisdiction, which typically involves "claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in federal court." *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978). *See also Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 989 n. 48 (3d Cir.1984) ("ancillary" jurisdiction pertains to claims other than those of plaintiff, such as compulsory counterclaims, while "pendent" jurisdiction pertains to plaintiff's non-federal claims where there is a federal claim which gives the court jurisdiction). This subtle distinction places in doubt Texas Eastern's broad reading of *Finley*.

We note secondly that Congress has confirmed the principle of ancillary jurisdiction over counterclaim defendants in the enactment of the Judicial Improvements Act of 1990, 28 U.S.C. § 1367 (using new statutory term, "supplemental jurisdiction").[6] Section

---

**5.** Texas Eastern further claims that the district court could have assumed personal jurisdiction over the excess insurers only by virtue of the discretionary authority represented in Federal Rule of Civil Procedure 13(h). Rule 13(h) provides that: "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Because, *inter alia*, the court made no explicit reference to its discretionary power to join the counterclaim defendants, Texas Eastern argues that the court did not properly exercise its discretionary authority.

Moreover, Texas Eastern asserts that Rule 13(h) prohibits Texas Eastern's counterclaim inasmuch as under the Rule a " 'counterclaim ... may not be directed solely against persons who are not already parties to the original action ...' ". Texas Eastern's letter brief, September 8, 1993, at p. 19 (citing *Baltimore & Ohio R. Co. v. Central Ry. Services, Inc.*, 636 F.Supp. 782, 786 (E.D.Pa.1986)).

We find Texas Eastern's argument to be without merit because, as we indicate in our opinion, we hold that the district court implicitly found *in personam* jurisdiction over the excess insurers. Furthermore, Texas Eastern's counterclaim was not directed solely against the counterclaim defendants, but requested the court adjudge that "*all* of Texas Eastern's insurers must bear, *jointly and severally*, all indemnity, damages, defense costs ...". Answer and counterclaim of defendant Texas Eastern, December 15, 1988, at p. 40 (emphasis added).

**6.** For the present purposes, § 1367(a) and (b) are of interest and read as follows:

> (a) ... [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

1367(b) of the Act restricts the extension of jurisdiction in diversity cases over "claims by *plaintiffs* against persons made parties under Rule 14, 19, 20, or 24," (emphasis added), and by its terms would not extend to Texas Eastern's counterclaims as party defendant. "Supplemental" jurisdiction under the statute extends to any related claim of the defendant that arises out of the same case or controversy as the original claim. *See* C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure Civil 2d,* § 1436 at 11 (Supp.1993); *see, also,* C. Wright, *Federal Courts,* § 79 at 527 n. 6 (4th ed. 1983) ("the bringing in of additional parties to respond to a compulsory counterclaim does not destroy diversity jurisdiction"). Thus, it would appear that the Judicial Improvements Act would preserve jurisdiction in the *F & C* action.[7] We hold that the additional non-diverse counterclaim defendants do not destroy diversity jurisdiction in the *F & C* action because there is complete diversity of citizenship between the originally named parties.

### 3.

Having found that federal jurisdiction was correctly found in the *F & C* case and that all of the insurers are parties to that action, we note the possibility that the principle of ancillary jurisdiction might again be invoked to ground subject matter jurisdiction in the remaining two cases, *AEGIS* and *Texas Eastern.* We need not rely here on the principle of ancillary jurisdiction, however, because we find an independent source of federal subject matter jurisdiction in both cases.

### B. The *AEGIS* Case

■ The second of the actions that was before the district court, *Associated Electric & Gas Insurance Services, Ltd. v. Texas Eastern Transmission Corp.,* No. 88–2126, was filed by two of Texas Eastern's excess carriers on March 11, 1988 in the United States District Court for the Eastern District of Pennsylvania, in which were joined as defendants with Texas Eastern all other insurers, including ICI. Based on the presence of the foreign state, ICI, as a party "against" which a nonjury civil trial was brought, jurisdiction in federal court was pursuant to 28 U.S.C. §§ 1330(a) and 1603.[8] Texas Eastern argued that the defendant insurers in the *AEGIS* action, most notably ICI, should be realigned with *AEGIS* as plaintiffs to reflect their alleged substantive party designations, making the suit no longer

7. The Judicial Improvement Act of 1990 became operative on December 1, 1990, well after the *F & C* action was filed. We make reference to the Act merely to evidence the viability of the principles which have generated the doctrine of ancillary jurisdiction in light of the doubt cast upon such jurisdiction by *Finley.* We are satisfied however that the Judicial Improvement Act codifies the implications of the Court's distinctions in *Owen Equipment.*

8. The Foreign Sovereign Immunities Act, Pub.L. No. 94–583, 90 Stat. 2892 (Oct. 21, 1976) (FSIA), establishes the jurisdiction of the federal courts in cases involving foreign sovereigns and the rights of foreign sovereigns with regard to their non-immune commercial or private acts to have actions brought against them adjudicated in a federal bench trial. 28 U.S.C. § 1603 of the FSIA and its jurisdictional provision, 28 U.S.C. § 1330, provide respectively that,

28 U.S.C. § 1603:
(a) A "Foreign state," ... includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state ...
(b) An "agency or instrumentality of a foreign state" means any entity—
(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
(3) which is neither a citizen of a State of the United States ... nor created under the laws of any third country.
28 U.S.C. § 1330:
The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.
We uphold the district court's finding that ICI is a "foreign state" within the meaning of 28 U.S.C. § 1603(a). The district court has determined that ICI is "an agency or instrumentality of a foreign state" in that it is a separate legal person, a majority of its shares are owned by a foreign state, the Republic of Ireland, and it is neither a citizen of a state of the United States, nor created under the laws of a third country. These findings are not clearly erroneous.

"against" a foreign state, and thus depriving the district court of FSIA subject matter jurisdiction. The district court concluded that the principle of realignment is inapplicable in matters in which subject matter jurisdiction is predicated on something other than diversity of citizenship. The district court found that the *AEGIS* case was "against a foreign state" within the meaning of the FSIA and exercised its jurisdiction over the matter.

In support of its argument for realignment, Texas Eastern argues that the primary purpose of the *AEGIS* action was to obtain a declaratory judgment that Texas Eastern was not entitled to coverage under any of the policies issued to it by the two excess carrier plaintiffs, and that ICI had a common interest with the excess carriers on that primary issue against Texas Eastern. Texas Eastern reasons analogously that, under principles of realignment developed in the context of the federal diversity jurisdiction statute, the court was obliged to realign the nominal parties to reflect their actual adversity of interest on the primary dispute as a prerequisite to deciding whether a basis for jurisdiction remained under the FSIA. Texas Eastern argues that because ICI as well as the remaining insurers nominally designated as defendants should have been realigned with the two excess carriers who brought suit, the action was not "against a foreign state," and the jurisdictional authority of the FSIA was improperly invoked to obtain jurisdiction.[9] We disagree.

#### 1.

It is beyond cavil that federal law determines whether the elements of federal jurisdiction, original or removal, have been satisfied. Here, of course, we must decide whether the *AEGIS* action is "against" ICI, as required under § 1330. Given this explicit jurisdictional requisite, it is self-evident that Congress conditioned its conferral of jurisdiction on the substantive party alignment of any purported FSIA action. Thus we are obliged to ascertain the real adversity of

interest between AEGIS and ICI in the *AEGIS* case and to realign them according to their substantive interests before recognizing § 1330 jurisdiction.

■ It is also widely recognized that in enacting the FSIA and related statutory amendments, Congress sought to create a new division in addition to federal question and diversity jurisdiction for federal subject matter jurisdiction. *See, e.g., Ruggiero v. Compania Peruana de Vapores,* 639 F.2d 872 (2d Cir.1981). It is further evident that enactment of the FSIA was in response to unique policy considerations touching on the international relations of the United States, considerations not apropos to the federal diversity statute. Indeed, the Supreme Court has acknowledged Congress' deliberate intent to circumvent much of the potential for interference with the federal government's foreign relations caused by lack of uniformity and local bias in civil caselaw involving foreign states as defendants by channelling private actions against foreign sovereigns away from the state forums and into federal courts to be adjudicated in nonjury trials. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 497, 103 S.Ct. 1962, 1973, 76 L.Ed.2d 81 (1983); *see also* H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6611–12. Thus, the FSIA establishes the federal district courts as the forum preferred by Congress for bringing suit against a foreign state, and the policy of "jealous restriction" which has characterized application of the diversity statute is not operative in the FSIA context. *City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 76, 62 S.Ct. 15, 20, 86 L.Ed. 47 (1941) (Congress created diversity jurisdiction with "jealous restriction"). It is with this in mind that we apply the principle of realignment to the *AEGIS* case.

#### 2.

The landmark Supreme Court precedent applying the principle of realignment states,

---

9. Because a number of the excess carriers share common citizenship with Texas Eastern, diversity jurisdiction was precluded. Thus, if the principle of realignment had been applied as Texas

Eastern advocated, there would not remain any basis for federal jurisdiction over the *AEGIS* action.

Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants. It is our duty, as it is that of the lower federal courts, to "look beyond the pleadings and arrange the parties according to their sides in the dispute." *Dawson v. Columbia Trust Co.,* 197 U.S. 178, 180 [25 S.Ct. 420, 421, 49 L.Ed. 713 (1905) ]. ... Whether the necessary "collision of interests," *Dawson v. Columbia Trust Co., supra,* at 181 [25 S.Ct. at 421], exists, is therefore not to be determined by mechanical rules. It must be ascertained from the "principal purpose of the suit," *East Tennessee, V. & G.R. v. Grayson,* 119 U.S. 240, 244 [7 S.Ct. 190, 192, 30 L.Ed. 382 (1886) ] and the "primary and controlling matter in dispute," *Merchants' Cotton Press Co. v. Insurance Co.,* 151 U.S. 368, 385 [14 S.Ct. 367, 373, 38 L.Ed. 195 (1894) ].

*City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 69–70, 62 S.Ct. 15, 16–17, 86 L.Ed. 47 (1941).

This landmark explication presents a two-tiered methodology for judicial implementation of the federal diversity statute. The first step obliges the federal court to isolate the "primary purpose" or "primary and controlling matter" in a multiple claim suit. The court then directs its attention exclusively to this "primary" or substantively most significant claim in order to facilitate ascertainment of whether the statutory requisites of diversity jurisdiction have been met. This "primary purpose" test, which ranks issues according to their substantive importance in the lawsuit, reflects the approach appropriate to a restrictive and limited jurisdictional mandate, as in the case of the diversity statute. It appears, in fact, to be uniquely well suited to the express language and broad policy objectives of § 1332. We have indeed adopted this test when determining that jurisdiction is properly based on diversity of citizenship. *See, e.g., Employers Insurance of Wausau v. Crown Cork and Seal Co., Inc.,* 905 F.2d 42, 46 (3d Cir.1990) (requiring a "real dispute on a primary issue in the controversy" for purposes of the diversity jurisdiction statute). The "primary purpose" test, however, appears much less well suited to the purposes of § 1330, which embodies an effort on the part of Congress to *encourage* rather than merely *permit* litigation in the federal courts.

The second step involved in implementing the jurisdictional mandate at issue in the Court's landmark diversity realignment case obliges the federal courts to "look beyond the pleadings and arrange the parties according to their sides in the dispute." This step, though sometimes conflated with the first step in a diversity analysis and hence commonly identified with diversity jurisprudence, in fact represents a broader principle of judicial interpretation of statutes conferring jurisdiction in federal courts, where the statutory conferral of jurisdiction is predicated upon the adversarial relationship of the parties.[10]

10. Although the "realignment" of parties typically occurs as part of a federal court's determination of diversity of citizenship, the Supreme Court has "realigned" nominal parties in at least one case where diversity of citizenship indisputably created grounds for original jurisdiction in the federal district court, and was not challenged. *Chicago, R.I. & P.R. Co. v. Stude,* 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317 (1954). In *Stude,* state law provided for appeal to a state court from an administrative condemnation proceeding instituted under state law and resulting in a damages award to a landowner. The petitioner filed an appeal in state court, designating the landowner as "plaintiff" and the petitioner as "defendant," as was required also by state law. The petitioner subsequently sought to remove the state court proceeding on the ground that 28 U.S.C. § 1441, the relevant federal removal statute, authorized "the defendant or the defendants" to remove civil actions brought in a state court of which the federal court has original jurisdiction. In the context of examining the merits of a motion to remand, the Court decided that the procedural provisions of the state law were not controlling for purposes of construing the federal removal statute. *Id.,* 346 U.S. at 580, 74 S.Ct. at 294–95. Thus the fact that the case was docketed in state court with the petitioner as "defendant" was not dispositive for purposes of the right to remove. The Court "realigned" the parties in conformity with their substantive adversity of interest, and held that remand was proper. The Court realigned the parties not to effectuate the limits of diversity jurisdiction, which would not have been vitiated by realignment, but rather to enforce the separate limits on removal jurisdiction. Thus, it is clear that the obligation of the federal courts to realign parties to reflect their true adversity of interest for purposes of deciding the statutory basis for jurisdiction is not limited to cases purportedly based on § 1332.

In other words, where party designations have jurisdictional consequences under the relevant federal jurisdiction statute, be it § 1332 diversity, § 1330 FSIA or their related removal provisions, the principle of "realignment" obliges the court to penetrate the nominal party alignment and to consider the parties' actual adversity of interest for purposes of determining whether there is a statutory basis for jurisdiction. Thus, despite some confusion in nomenclature caused perhaps by the commonplace application of "realignment" in the diversity context, the principle embodied by the term "realignment" is one of broader application and is not reducible to the "primary purpose" test utilized in the diversity context. It is incumbent upon us in the present appeal to consider whether a complex FSIA case warrants departure from the "primary issue" analysis which we have adopted in the context of diversity jurisdiction, and application of a more inclusive realignment analysis.

With this in mind, we note that other circuits have rejected the "primary purpose" test in favor of the more lenient "substantial controversy" test to determine § 1330 jurisdiction where multiple claims are pleaded. *See, e.g., American Motorists Insurance Company v. Trane Company*, 657 F.2d 146, 149 (7th Cir.1981) (substantial controversy applied to diversity action). Under the "substantial controversy" ranking of issues standard, the court determines, as precursor to potential realignment, which of the conflicts asserted in the litigation are merely "substantial," and then whether the parties in question are really opposed according to their true interests in any of their substantial conflicts. Under this standard, it would not defeat jurisdiction if there were no statutory basis for jurisdiction on the primary issue in the litigation, as long as the statutory elements of jurisdiction were present on any other "substantial" issue.

In an even more lenient approach than the "substantial controversy" test, a federal court might recognize a plaintiff/defendant relationship of adversity if real adversity exists between the parties on *any* issue asserted in the plaintiff's complaint, regardless of the relative significance of that issue. Such a

liberal approach has not been applied to diversity cases in any circuit, as well it ought not given the restrictive language and policy of § 1332. The present complex FSIA case, however, being one of first impression in our circuit, leads us to examine whether it is warranted here. We are guided in this determination by consideration of the structure and purpose of the FSIA and related statutes.

3.

 In letter and spirit, a liberal approach in implementing the FSIA's comprehensive jurisdictional scheme is most conducive to the FSIA's paramount objectives of keeping federal courts open to foreign states, and indeed of affirmatively encouraging private actions against foreign states to be adjudicated in federal court. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488–89, 103 S.Ct. 1962, 1968–69, 76 L.Ed.2d 81 (1983); H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604. Unlike the diversity statute, § 1330 grants original jurisdiction in the district court without regard to the amount in controversy in order to facilitate this policy. Similarly, § 1441(d) confers an absolute right of removal on the defendant foreign state. Thus, the judicial trend to constrict federal diversity jurisdiction does not inform our application of the principle of realignment here. We hold that the restrictive "primary issue" test does not comport with the statutory language or legislative intent of the FSIA. Because the "substantial controversy" test is more than adequately satisfied in the *AEGIS* action, we need not decide whether only minimal adversity need exist between the party bringing the action and the foreign state in order to trigger § 1330 original jurisdiction and § 1441(d) removal jurisdiction.

Applying the substantial controversy standard, we note preliminarily that Texas Eastern itself raises substantial claims against ICI in all three actions, contravening its assertion that ICI is an insignificant party. Moreover, in the *AEGIS* action, AEGIS has sought the adjudication of its rights and obligations *inter se* with respect to the other

insurers, including ICI. AEGIS sought a declaration of entitlement to relief by way of contribution or indemnification from ICI and the other insurers; hence, ICI was subject to potential liability, which the district court found to be more than seven million dollars.[11] ICI was indeed haled into court by AEGIS against its will and must be afforded the special protection of the FSIA. Texas Eastern cross-claimed and counterclaimed in the *AEGIS* action asserting joint and several liability among the insurers, including ICI, and not limited to the excess insurers as between themselves.[12] Thus, while on the primary issue in *AEGIS* there is not a collision of interests between AEGIS and ICI, there is certainly an element of adversity between AEGIS and ICI sufficient to satisfy § 1330's requisite that an action be brought "against" a foreign sovereign. Although the district court erroneously reasoned that realignment was a principle associated exclusive-

ly with diversity jurisdiction, we will affirm the conclusion of the district court that § 1330 subject matter jurisdiction over the *AEGIS* case was proper.

### C. The *Texas Eastern* Case

■ *Texas Eastern Transmission Corp. v. Fidelity & Casualty*, No. 88–5707,[13] the third action before the district court, was filed on March 21, 1988, in Harris County, Texas, against all insurers and removed to the United States District Court for the Southern District of Texas by ICI, pursuant to 28 U.S.C. § 1441(d).[14] It was then transferred to the Eastern District of Pennsylvania by order of the Southern District Court dated July 7, 1988. Texas Eastern contends that a service of suit clause appearing in policies subscribed by ICI in favor of Texas Eastern constitutes a waiver of ICI's right of removal under 28 U.S.C. § 1441(d).[15] Texas Eastern

---

**11.** In the *AEGIS* complaint AEGIS alleged a dispute between "plaintiffs and some or all of the Defendant Insurers [as to] whether and to what extent each is obligated to provide insurance coverage to Texas Eastern with respect to the Underlying Environmental Matters." *AEGIS* complaint, ¶ 35. In the Ad Damnum Clause, AEGIS demanded a declaration of "the respective rights and obligations of plaintiffs, each Defendant Insurer, the United States, EPA, and Texas Eastern, *inter se*, with respect to insurance coverage for the amounts expended or to be expended by Texas Eastern regarding the Underlying Environmental Matters."

**12.** In response to a question from our panel regarding the adversity of interest between the syndicates or groups of syndicates of individual entities and limited partnerships organized under the laws of Great Britain for the purpose of selling insurance, collectively referred to as Lloyds, and ICI, which participated in one or more syndicates of Lloyds, counsel for the insurers responded

There is an issue as to whether [the discharge of PCB from 89 sites along the pipeline over a protracted period of time] constitutes one occurrence or multiple occurrences. AEGIS is a first-layer excess insurer in the middle to late '70s. Other excess insurers sit above it. If there is a finding that there are multiple occurrences, the loss is spread numerous times over the primary and low-layer excess insurance companies and would never come up vertically to the higher layer excess insurers. However, if there is a finding of a single occurrence, Texas Eastern has made a claim of $750 million against its insurers [and liability would run vertically].

Transcript of argument on panel rehearing at p. 39–40.

**13.** In filing this case Texas Eastern was in substance refiling its earlier action against all of its insurers brought in New Jersey state court, *Texas Eastern Transmission Corporation v. Fidelity & Casualty Company*, docketed as No. WO–30685–87, and dismissed on March 17, 1988. This earlier state court action formed the basis for Texas Eastern's motion to dismiss or stay the *F & C* action which was then pending in the Northern District of Texas.

**14.** Section 1441(d) provides:

(d) Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

**15.** The service of suit clause in question provides:

... Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

relies on our prior holding in *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207 (3d Cir.1991), in which we reviewed a similar contractual provision in the context of diversity jurisdiction.[16]

Noting that Congress had made clear its intent that foreign states and instrumentalities of foreign states shall have the right to have civil litigation decided in federal court under the FSIA, the district court concluded that a forum selection clause, by which a defendant foreign state purports to accede to jurisdiction in either federal or state court, does not preclude removal to federal court. (Citing *Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390 (2d Cir.1985) (forum selection clause which places jurisdiction in either federal or state court is not waiver of foreign sovereign's § 1441(d) right to remove)). Assuming for purposes of argument that the right to remove could be contractually waived, the district court held that, at the very least, such a waiver must be express and unambiguous in the context of the FSIA. Not finding this, the district court denied the motion of Texas Eastern to remand the action to the state court of Texas.

In examining the nature of the service of suit clause in question and its efficacy in depriving ICI of its § 1441(d) right to remove in *Texas Eastern*, we are again obliged to take cognizance of the policy imperatives of the FSIA. We find those imperatives absent in *Foster*, the case upon which Texas Eastern relies. It is true that in *Foster* we construed a forum selection clause in a reinsurance agreement as a waiver of the reinsurer's right to remove. But in *Foster*, a diversity of citizenship breach of contract case, we also explicitly noted that the FSIA poses unique considerations that might warrant a different conclusion. 933 F.2d at 1217–18 n. 15. In an extensive footnote, we contrasted the diversity context of *Foster* with the FSIA removal context of *In re Delta*

*American Re Ins. Co.*, 900 F.2d 890 (6th Cir.), *cert. denied*, 498 U.S. 890, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990), which held that contractual waiver of the § 1441(d) right to remove, if it is to be recognized, must be clear and unequivocal. *Id.* at 894. Although waiver of a § 1441(d) right of removal was not an issue in *Foster*, we acknowledged *In re Delta's* reliance on the peculiar purposes of the FSIA, which are best served by a uniform body of law developed in federal court, and the purpose of § 1441(d) in particular, which is to give the defendant foreign state the unqualified right to remove any civil action brought against it in state court. *See also Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1409 (9th Cir.1989) (generally applicable rules of removal do not apply to the uniquely expansive § 1441(d)).

We concur with our sister circuits which give an expansive interpretation of the nature of the right to remove under § 1441(d). Given Congress' unusually strong preference for adjudication of claims against foreign states in the federal court system, we hold that it would contravene strong public policy to permit a less than absolutely unequivocal contractual provision to divest a federal district court of FSIA subject matter jurisdiction. While the FSIA does not confer exclusive jurisdiction in the federal courts and does not explicitly limit a foreign state's ability to waive its right to remove, the district court's power to remand based on breach of a contractual forum selection clause is doubtful where, as here, the clause may be construed as nothing more than a waiver of the right to contest in personam jurisdiction. *See Proyecfin*, 760 F.2d at 397. Thus, our holding in *Foster* is inapplicable in the FSIA context. A remand in this case would be unreasonable, and hence the purported contractual waiver is not enforceable. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972) (forum selection clause is binding

---

16. The issue of waiver is the only one remaining on rehearing. The district court dispelled the other issues raised by Texas Eastern, including its assertion that because ICI's interest in the case is allegedly de minimis, it should have been precluded from removing the case to federal court. The district court held that ICI clearly has a potential liability as an excess insurer of at least several million dollars, and even if its monetary interest in the case were de minimis, it retained the express right to remove the case to federal court under § 1441(d). The district court also found that ICI had timely removed the case to federal court.

unless enforcement is unreasonable, unfair or unjust).

Moreover, we note that ICI was not a "foreign state" within the meaning of FSIA at the time ICI subscribed the policies at issue. Thus, ICI at the time it entered into the contracts did not have an absolute right of removal under § 1441(d) to waive, and did not conduct its contract negotiations with the effect of the forum selection clause on a § 1441(d) right of removal in mind. The purported waiver was negotiated strictly between private parties. The foreign sovereign was not a party to the original contract and did not negotiate the original terms. Inasmuch as ordinary principles of contract interpretation apply here, the fact that the forum selection clause was not the subject of negotiations between Texas Eastern and the foreign state militates against a finding of waiver. Under these circumstances, the service of suit clause does not abrogate ICI's absolute right to remove under § 1441(d). The structure and purpose of the FSIA, as well as ordinary principles of contract interpretation, support the district court's exercise of subject matter jurisdiction and its denial of Texas Eastern's motion for remand.

### III.

We will affirm the district court's exercise of jurisdiction in each of the three consolidated actions that are the subject of this opinion. The substantive questions presented in these three cases were decided as to all parties in the opinion of the district court granting summary judgment against Texas Eastern, dated July 9, 1992, which we will affirm in a separate opinion filed contemporaneously with this one.

In sum, in our companion opinion which will be filed today, we affirm the judgment of the district court as to Texas Eastern's liability in all three cases. *The Fidelity & Casualty Co. of New York v. The Texas Eastern Transmission Corp.*, 15 F.3d 1249 (3d Cir. 1994). For the sake of completeness and for the purpose of appropriate cross reference, we reiterate the affirmance of that judgment here. After rehearing, we hold that the judgments of the district court as to subject matter or personal jurisdiction in *Associated*

*Electric & Gas Insurance Services, Ltd. v. Texas Eastern Transmission Corp. et al., The Fidelity & Casualty Co. of New York v. Texas Eastern Transmission Corp.* and *Texas Eastern Transmission Corporation v. Fidelity and Casualty Company of New York et al.* will be affirmed in all respects.

ALITO, Circuit Judge, dissenting:

This case was originally decided by an unpublished opinion filed in May 1993. For two reasons, I dissented in part. First, I believed that the district court, ruling prior to our decisions in *Foster v. Chesapeake Insurance Co.*, 933 F.2d 1207 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991), and *Employers Insurance of Wausau v. Crown Cork & Seal Co.*, 942 F.2d 862 (3d Cir.1991), had erroneously rejected TETCO's argument that subject matter jurisdiction was lacking in two of the three civil actions that were before the court—the *Texas Eastern* and *AEGIS* actions. Second, I believed that the district court's grant of summary judgment in favor of F & C in the third action—the *F & C* action—should be reversed in part. (My views on this latter issue are set out in my partial dissent from the other opinion that the panel majority has filed in this case).

On June 11, 1993, TETCO filed a petition for rehearing and a suggestion for rehearing in banc, contending that the district court lacked jurisdiction in the *Texas Eastern* and *AEGIS* cases. On August 18, 1993, an order granting panel rehearing was issued. After receiving supplementary briefing on the jurisdictional questions and after reargument, the panel majority has reached precisely the same conclusion as it did before, albeit in some respects for different reasons. I remain in disagreement with the majority on these jurisdictional questions, and I therefore respectfully dissent.

As noted, three civil actions were before the district court. The first case, the *F & C* action, was originally filed in the United States District Court for the Northern District of Texas, with federal jurisdiction predicated on diversity of citizenship. This is the only one of the three actions in which I think

federal jurisdiction was present. The second case, the *Texas Eastern* case, was filed in state court in Texas and subsequently removed (improperly, in my view) to the United States District Court for the Southern District of Texas. The third case, the *AEGIS* case, was filed in the United States District Court for the Eastern District of Pennsylvania, with federal jurisdiction based (wrongly, I believe) on 28 U.S.C. § 1330(a). Presumably because of the pendency of the *AEGIS* case in the Eastern District of Pennsylvania, the Judicial Panel on Multidistrict Litigation transferred the other two actions to that district and consolidated all three cases for purposes of pretrial proceedings. In September 1988, the district court rejected TETCO's challenges to the existence of federal jurisdiction in the *Texas Eastern* and *AEGIS* cases. Several years later, in a single order bearing the multidistrict litigation docket number assigned to the consolidated cases, the district court granted summary judgment against TETCO, and the current appeal followed. It was by this route—based from the start on erroneous jurisdictional premises—that these cases involving difficult, unsettled, and controversial questions of Texas insurance law, found their way to our court.

I will discuss, in turn, the jurisdictional questions presented in each of the three actions that were before the district court, but I will do so in the opposite order from that used by the majority. I have chosen this order, not for sheer contrariness, but because my discussion of the *F & C* action can best be understood after I have addressed the other two cases.

### I.

#### The *Texas Eastern* Case.

As I have noted, TETCO, preferring to litigate in the Texas state courts, originally filed this action in Harris County, Texas,

against its primary carrier, F & C, and its many excess carriers, including the Insurance Company of Ireland ("ICI"). ICI was a private entity when it entered into its insurance contract with TETCO, but "[w]hen financial difficulties threatened in 1985, the Irish government moved to preserve the company. Sealuchais Arachais Teoranta, a holding company created by the Irish Parliament and controlled by the Irish Minister for Industry, Trade, Commerce, and Tourism, acquired all of ICI's shares. With financial stability, its shares are to revert to the original shareholders." *Mobile Corp. v. Abeille General Insurance Co.*, 984 F.2d 664, 665 (5th Cir.1993). Contending that these developments made it a "foreign state" within the meaning of 28 U.S.C. § 1603,[1] ICI then removed this entire action to the United States District Court for the Southern District of Texas.

Assuming that ICI falls within 28 U.S.C. § 1603's definition of a "foreign state," I nevertheless believe that this removal was improper and that federal jurisdiction was lacking because the insurance contract between TETCO and ICI contained a clause featuring language that our court has already construed as a waiver of the right to remove. The clause in the TETCO–ICI contract stated that if ICI failed to pay any TETCO claim, ICI would, "at the request of the Insured," "submit to the jurisdiction of any court of competent jurisdiction within the United States" and would "comply with all requirements necessary to give such Court jurisdiction." In *Foster v. Chesapeake Insurance Co., supra,* one insurance company, Chesapeake, agreed to a virtually identical clause in a contract with another insurance company, Mutual Fire. When the rehabilitator appointed to marshal Mutual Fire's assets later sued Chesapeake in state court, Chesapeake removed the action based on diversity of citizenship. Holding that Chesa-

---

1. Under 28 U.S.C. § 1603(a) and (b), the term "foreign state" includes any entity
 (1) which is a separate legal person, corporate or otherwise, and
 (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is

owned by a foreign state or political subdivision thereof, and
 (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

peake had waived its right to remove, we wrote as follows:

> [B]y consenting to *"submit"* to *"any court"* of competent jurisdiction *"at the request of the Company,"* and to comply with all requirements necessary to give *"such court"* jurisdiction, Chesapeake agreed to go to, *and stay in,* the forum chosen by Mutual Fire.

*Foster,* 933 F.2d at 1216–17 (emphasis in original). In light of this holding, the virtually identical clause in the TETCO–ICI contract must be construed in the same way.

Although the majority tries to distinguish *Foster* on the ground that *Foster* involved removal based on diversity, rather than the Foreign Sovereign Immunities Act (FSIA), I find that effort unconvincing. The majority states:

> Given Congress' unusually strong preference for adjudication of claims against foreign states in the federal court system, we hold that it would contravene strong public policy to permit a *less than absolutely unequivocal contractual provision* to divest a federal district court of FSIA subject matter jurisdiction.

Maj.Op. # 1, at 1243 (emphasis added). This argument seems to fly in the face of *Foster.* Immediately after noting that *In re Delta Insurance Co.,* 900 F.2d 890 (6th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990), had held that a waiver of the right to remove under the FSIA must be clear and unequivocal, the *Foster* panel wrote:

> [W]e do not see why contractual waivers of the right to remove must be clear and unequivocal. . . .
>
> We think the "clear and convincing" standard so stringent as to be contrary to the right of parties to contract in advance regarding where they will litigate. A court simply should determine contractual waiver of the right to remove using the same benchmarks of construction and, if applicable, interpretation as it employs in resolving all preliminary contractual questions. Indeed, inasmuch as the determination of whether there is a waiver of the right of removal to be derived from a forum selection clause will at least in some cases, such

as here, be a matter of construction and thus of law, it seems anomalous to speak of a "clear and unequivocal" standard for we simply make plenary determinations of legal issues.

933 F.2d at 1218 n. 15 (emphasis added). I do not believe that the majority's decision in this case can be reconciled with this passage.

Moreover, even if such reconciliation were possible, I would find the majority's position unacceptable, for I cannot understand why "foreign states," when they choose to enter into contracts, should have the benefit of especially favorable rules of contract construction or interpretation. Are "foreign states" unable to afford competent lawyers to draft and review their contracts and thereby insure that the removal rights conferred by 28 U.S.C. § 1441(d) are not inadvertently compromised?

In any event, even if it were appropriate to apply such a rule to contracts signed by a foreign state, it simply makes no sense to apply that rule to the TETCO–ICI contract, since ICI was not a "foreign state" when that contract was formed. When TETCO entered into its agreement with ICI, it contracted for (and presumably paid for) ICI's agreement not to exercise any of the rights it then possessed to resist the jurisdiction of any court of competent jurisdiction in the United States. I do not think that TETCO should lose the benefit of this bargain simply because the Irish government chose to acquire ICI's assets. Nor do I think that TETCO should be penalized for failing to secure from ICI an agreement specifically stating that, if ICI should subsequently become a "foreign state," it would not exercise the special removal rights that such states possess. We can properly demand that parties exercise prudent foresight; we cannot require clairvoyance.

## II.

### The *AEGIS* Action.

Two of TETCO's excess insurers, Associated Electric & Gas Insurance Services, Ltd. (AEGIS) and National Surety Corp. (NS), filed this action in the United States District

Court for the Eastern District of Pennsylvania against TETCO, F & C, and TETCO's other excess carriers, including ICI. Relying on ICI's status as a defendant, the complaint alleged that jurisdiction was present based on 28 U.S.C. § 1330(a), which confers jurisdiction over a "civil action against a foreign state."

In its initial brief on appeal, TETCO argued that this action was not in reality against a foreign state. TETCO contended that the "primary issue" test adopted in *Employers Insurance of Wausau v. Crown Cork & Seal Co., supra,* should be applied, that the realignment of the parties was therefore required, and that ICI should be realigned as a plaintiff. After such realignment, TETCO argued, jurisdiction under 28 U.S.C. § 1330(a) would be lacking because the action would not be one *"against* a foreign state." TETCO Br. at 67–68 (emphasis added).

In response, the carriers did not argue that the "substantial conflict" test or any other lesser standard should be applied to determine whether ICI's interests were adverse to those of the other carriers. Nor did the carriers even hint that there was any real conflict between ICI and the other carriers. Instead, the carriers contended that "[r]ealignment to test subject matter jurisdiction is not appropriate where jurisdiction is based on the FSIA. Rather, it is an antidote to artificial maneuvers by parties to create diversity jurisdiction." Appellees' Joint Br. at 66. Alternatively, the carriers argued that, if the parties were realigned, one of the following two realignments should be chosen: "TETCO as plaintiff and the Carriers as defendants" or "all Carriers plaintiffs and TETCO a defendant." *Id.* at 66, 67. Tellingly, both of these realignments place all of the carriers, including ICI, on the same side.

In its initial unpublished opinion, the panel majority agreed with the carriers that realignment need not be considered. The panel described realignment as "a creature of diversity jurisprudence" and concluded that "application of realignment to Immunities Act jurisdiction would not serve any purpose." Op. at 7. Now, however, the majority states:

[I]t is self-evident that Congress conditioned its conferral of jurisdiction on the substantive party alignment of any purported FSIA action. Thus we are obliged to ascertain the real adversity of interest between AEGIS and ICI in the *AEGIS* case and to realign them according to their substantive interests before recognizing § 1330 jurisdiction.

Maj.Op. # 1, at 1239. Nevertheless, the majority again reaches the conclusion that the district court had jurisdiction over the AEGIS action under 28 U.S.C. § 1330(a). The majority reasons that this provision requires a lesser degree of adversity than is needed in diversity cases. Rejecting the "primary issue" test that our court has adopted in diversity cases, the majority holds that no more than a "substantial conflict" is necessary and finds that that test is satisfied here. The majority bases this conclusion on (1) the fact that the AEGIS complaint sought, among other things, a declaration of the plaintiffs' rights with respect to the carriers named as defendants, including ICI, and (2) a statement made by the carriers' counsel at oral argument. Maj.Op. # 1, at 1241–42. I disagree with this approach.

First, I question whether we should abandon the "primary issue" test simply because federal jurisdiction is invoked under 28 U.S.C. § 1330(a) rather than 28 U.S.C. § 1332(a)(1). Particularly if the "substantial conflict" test can be satisfied with the type of showing that the majority finds sufficient, I fear that that test may permit the unwarranted evasion of federal jurisdictional requirements. Second, even if the "substantial conflict" test is to be applied, I am not willing to hold that a "substantial conflict" exists in this case based on the facts that the majority cites. Surely, a "substantial conflict" cannot be found solely because that the complaint requests a declaration of AEGIS's and NS's rights with respect to ICI. Nor do I think that we should base our decision solely on the remarks of the carriers' attorney at oral argument. I certainly recognize, as the carriers' attorney pointed out, that the interests of the primary carrier, F & C, might under some circumstances become adverse to those of the excess carriers and that the interests

of excess carriers at "different levels" might become adverse. The critical question here, however, is whether there was in fact at least a "substantial conflict" between, on the one hand, two particular excess carriers (AEGIS and NS) and, on the other hand, another particular excess carrier (ICI). This question cannot be decided without analyzing the actual terms of the relevant insurance contracts. The parties have never provided us with any such analysis, and I do not think that we should attempt to perform such analysis on our own at the panel rehearing stage. Therefore, at the very least, I think that a remand to the district court is needed so that an appropriate analysis can be undertaken and so that the disposition of this question can be based on facts rather than supposition.

### III.

### The *F & C* Action.

This action was filed by F & C in the United States District Court for the Northern District of Texas against TETCO, with jurisdiction based on diversity of citizenship. There is no question that the district court had jurisdiction with respect to this action, but it is now hotly disputed whether the excess insurance carriers were or could properly be made parties to this action. F & C did not name the excess insurers as parties— and F & C could not have named many of them without destroying federal jurisdiction, since they share common citizenship with TETCO. As noted, however, the excess carriers were named as parties in the *Texas Eastern* and *AEGIS* actions. After those cases had been consolidated with the *F & C* action and after TETCO's jurisdictional challenges in the *Texas Eastern* and *AEGIS* actions had been rejected, TETCO filed counterclaims against the excess insurers in the *F & C* case, but TETCO never served the excess carriers with summonses, and many of them asserted the absence of personal jurisdiction as a defense. For the most part, however, it appears that the parties and the district court paid little if any attention to the question whether the excess insurers were parties in the *F & C* case as opposed to the other two consolidated cases.

It was not until TETCO petitioned for rehearing that the parties paid any significant attention to the question whether the excess insurers had been made parties in the *F & C* case. Then, after panel rehearing was granted, both sides advanced precisely the opposite of the arguments that one would have expected them to make when the counterclaims were filed. TETCO offered a long list of reasons why its own counterclaims were defective: the counterclaims were never served, and the excess insurers did not waive their objections to personal jurisdiction; the counterclaims were improper under Fed.R.Civ.P. 13(h) and, in any event, the district court never decided whether, in the exercise of its discretion, it would permit the excess insurers to be joined under that provision; and finally, since there was no independent federal jurisdictional basis for TETCO's counterclaims against the excess insurers, the district court could not, under *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), exercise jurisdiction over them. The carriers responded with an equally lengthy list of reasons why the excess insurers had properly been made parties. Agreeing with the carriers, the majority rejects all of TETCO's arguments. Among other things, the majority finds that the excess insurers waived their objections to personal jurisdiction by litigating in the district court, and the majority adopts a narrow (and, to my mind, questionable) interpretation of *Finley.*

I think it is inadvisable for the panel to delve into these questions at this juncture. For example, I would not, at the rehearing stage, decide whether the excess insurers participated in the *F & C* case (as opposed to the other two cases) so as to be deemed to have waived their objections to personal jurisdiction; this is a fact-bound question never addressed by the district court. Nor would I rush to decide whether, despite *Finley,* the district court could exercise subject matter jurisdiction over the counterclaims.

Beginning in September 1988, when the district court rejected TETCO's jurisdictional challenges to the *Texas Eastern* and *AEGIS* actions, the proceedings in the three consolidated cases went forward on the premise that the court had jurisdiction in all three

actions. Hence, when the district court granted summary judgment against TETCO, it issued a single order bearing the multidistrict litigation docket number assigned to all three consolidated cases. Since I believe that the district court lacked jurisdiction in two of those actions, I would vacate that order and remand the *F & C* case to the district court. The district court could then, in the first instance, rule on whatever arguments the parties chose to pursue. If necessary, the district court could also, in the first instance, decide the fact-bound question whether the excess insurers waived any objections to personal jurisdiction in the *F & C* case as a result of participating in it. Until the district court has ruled, however, I do not think that our court should consider the long list of questions—some highly artificial, some fact-bound, and some legally difficult—that the parties advanced with respect to these counterclaims after panel rehearing was granted.